**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MELONIE BRATCHER,

          Plaintiff,

v.

NAVIENT SOLUTIONS, INC.,

          Defendant.

No. 3:16-cv-00519-HES-JBT

**DEFENDANT NAVIENT SOLUTIONS, INC.'S RESPONSE
TO PLAINTIFF'S MOTION TO COMPEL**

Defendant Navient Solutions, Inc. ("NSI"), by and through undersigned counsel, in response to the Motion to Compel (the "Motion") filed herein by plaintiff Melonie Bratcher ("Bratcher"), states as follows:

**I.**     **Introduction**

The instant Motion is meritless and intended to harass NSI. Contrary to Bratcher's assertions, NSI has not engaged in any "obstructive delay tactics" or "gaming of the discovery process." (Motion, ¶¶ 8, 13.) Rather, in fulfilling its discovery obligations, NSI has acted diligently, cooperatively and in good faith. Further, and more importantly, NSI has provided the information to which Bratcher is entitled on her claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, et seq. ("FCCPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). Accordingly, the Court should deny the Motion on multiple grounds.

First, Bratcher's Requests regarding NSI's policies and procedures are improper. By those requests, Bratcher demands not only NSI's policies and procedures related to compliance

with the TCPA, FCCPA, and FDCPA, but also "<u>all</u> internal emails" and "<u>all</u> internal memoranda, bulletins, letters, committee or team reports, . . . meeting minutes, or other documents" related to compliance with these statutes.  These requests plainly are overbroad and burdensome, and seek documents that are irrelevant and disproportionate to the needs of Bratcher's case (and also documents that would be privileged).   In addition, and notably, NSI has already provided Bratcher with the pertinent compliance policies and procedures themselves.  Thus, NSI should not be put to the burden of compiling this broad range of irrelevant documents.

<u>Second</u>, Bratcher seeks documents and information regarding complaints against NSI. Specifically, Bratcher seeks production of governmental entity complaints and consumer or attorney complaints.  These documents are irrelevant and well beyond Bratcher's legitimate need for information.  Further, through the parties' meet and confer process, NSI has already produced legal complaints involving TCPA, FCCPA, and FDCPA claims for the past four years.  NSI should not now be required to pull every document and email that relates to a "complaint," no matter what type or how framed.  Moreover, the requests seek documents that contain highly sensitive confidential and proprietary information (and, to some extent, also may be privileged).

<u>Third</u>, Bratcher seeks documents and information regarding NSI's dialing system and the phone calls NSI made to Bratcher.  These requests are irrelevant, however, as NSI has agreed to stipulate that the calls to Bratcher were made with an Automatic Telephone Dialing System. Further, NSI has produced all information related to phone calls to Bratcher, including the call log and call recordings.  Bratcher's Motion is therefore moot as to these points.

<u>Fourth</u>, and finally, Bratcher takes a plainly unreasonable position on the attorney-client privilege and the necessity of a privilege log.  This is so because Bratcher's Requests seek, for instance, "<u>all</u> internal emails" related to NSI's TCPA compliance efforts, which would cover a

CHICAGO/#2942455.2

vast-range of privileged material and require creation of an extensive privilege log (to put it mildly). Meanwhile, Bratcher has refused to limit these requests whatsoever, such as by agreeing that such emails are not called for. Accordingly, NSI stands by its privilege objections, and maintains that Bratcher is not entitled to a privilege log that would be grossly disproportionate to the needs of her case.

For these reasons, the Court should deny the Motion. Also, because the Motion is frivolous and harassing, the Court should award to NSI the attorneys' fees and costs incurred in opposing the Motion. Indeed, in another case pending in the Southern District of Florida, the court recently denied a motion to compel by Bratcher's counsel raising the same arguments at issue here because the discovery sought was "neither relevant nor proportional to the needs of the case." See Cedeno v. Navient Solutions, Inc., No. 16-61049-CIV-UNGARO/OTAZO-REYES, Dkt. 41 (S.D. Fla. Dec. 8, 2016).

## II.  Background

### A.  NSI and Bratcher's Loan

NSI is engaged in the business of servicing student loans, including federal loans administered under the Federal Family Education Loan Program (FFELP). The servicing of FFELP loans is governed by a complex set of federal regulations. See 34 C.F.R. §§ 682.400–682.423. At a minimum, when loans are delinquent, NSI is required to contact the borrowers. 34 C.F.R. § 682.411(c)–(f). Here, Bratcher is the borrower on two delinquent FFELP loans serviced by NSI. When Bratcher became delinquent on her loans, NSI began calling her to assist her in resolving her account.

### B.  The Complaint

The TCPA governs, among other things, the use of automated telephone dialing equipment to make calls to cellular telephones. Such calls may be made with the recipient's

"prior express consent," and calls made without the requisite consent are subject to statutory damages, in the amount of $500 for negligent violations or up to $1,500 for willful violations. The FDCPA and FCCPA govern debt collection practices and prohibit debt collectors from using abusive, unfair or deceptive practices to collect debts.

According to the Complaint, Bratcher revoked her prior express consent for calls to her cellular telephone.  (Complaint, ¶ 27.)  However, according to Bratcher, NSI called continued to call her thereafter.  (Id., ¶ 28.)  On April 28, 2016, Bratcher filed her Complaint against NSI, asserting claims for violations of the TCPA, FDCPA and FCCPA

### C.   The Discovery Proceedings

On August 9, 2016, the Court issued a Case Management and Scheduling Order, setting the discovery cutoff for March 17, 2017.  Over a month later, on September 12, 2016, Bratcher propounded her discovery requests to NSI, which included fourteen Interrogatories, thirty-nine Requests for Production, and twenty-two Requests for Admission.  NSI timely responded to these discovery requests on October 17, 2016.

About three months later, on January 5, 2017, Bratcher emailed NSI to schedule a Rule 3.01(g) conference.  The conference took place on January 10, 2017.  Although NSI maintains that its original responses were sufficient, in the spirit of cooperation, and in an attempt to avoid unnecessary motion practice, NSI agreed to make a supplemental production of documents and to provide certain supplemental written responses.

Although NSI ensured Bratcher that it was working to produce the documents, Bratcher filed the instant Motion, contending that NSI has been "obstructive" and has engaged in "delay tactics and . . . gaming of the discovery process."  (Motion to Compel, ¶¶ 8, 13.)  To the contrary, Bratcher took her time in propounding discovery, and in raising any supposed

deficiencies with NSI.  Moreover, since Bratcher raised these issues with NSI, NSI has produced thousands of documents.

### D.       Bratcher's Motion

The Motion focuses on several of NSI's responses to Bratcher's Requests for Production and Interrogatories, each of which fall into one of the following categories: (1) information related to NSI's policies and procedures, (2) information related to prior complaints against NSI, and (3) information regarding the phone calls NSI made to plaintiff.  Before Bratcher filed the Motion, NSI agreed to produce information responsive to these subjects in order to avoid unnecessary court involvement.  Nevertheless, Bratcher filed the Motion.  At any rate, since the filing, NSI has produced all information related to these topics to which Bratcher is entitled.  Accordingly, most of the issues raised in the Motion have been resolved.

With respect to policies and procedures, NSI produced its policies and procedures related to compliance with the TCPA, FCCPA, and FDCPA.  Accordingly, NSI has complied with Bratcher's Requests for Production Nos. 1, 9, 15, 16, 17, 27, and 28 to the extent it is required to do so under the law.  As will be explained below, to the extent Bratcher seeks information related to these policies and procedures -- such as internal correspondence, memoranda, etc. -- the Requests are irrelevant, disproportionate to the needs of the case, and harassing.

With respect to prior complaints, NSI produced complaints alleging violations of the TCPA, FCCPA, and FDCPA from the past four years.  Accordingly, NSI has complied with Bratcher's Requests for Production Nos. 36, 37, 38, and 39, and Interrogatory No. 14 to the extent it is required to do so under the law.  As will be explained below, to the extent Bratcher seeks information related to informal complaints, the Requests and Interrogatories are irrelevant, disproportionate to the needs of the case, and harassing.

CHICAGO/#2942455.2

Finally, Plaintiff has all information she needs regarding the phone calls at issue.  NSI has agreed to stipulate that the phone calls to Plaintiff were made with an Automatic Telephone Dialing System.  Accordingly, the Requests and Interrogatories related to the calling equipment -- specifically, Requests for Production Nos. 17, 27, and 34, and Interrogatory No. 3 -- are irrelevant.  Further, NSI produced the call log listing the calls made to Bratcher.  Thus, Request for Production No. 18 has been resolved.

III.   **Argument**

A.     **Legal Standard**

The Federal Rules of Civil Procedure define the general scope of civil discovery as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Here, NSI has acted in the proper spirit and in compliance with its obligations.  In contrast, Bratcher's positions are unreasonable, and this Motion is frivolous, unnecessary and harassing -- particularly given NSI already produced all documents Plaintiff could reasonably be entitled to.

B.     **Bratcher Is Not Entitled To Duplicative And Superfluous Documents That Would Be Very Burdensome To Locate, Compile And Produce.**

1.     **Policies And Procedures - Request Nos. 1, 9, 15, 16, 17, 27, And 28**

As noted previously, NSI has produced its policies and procedures relating to compliance with the TCPA, FCCPA, and FDCPA.  However, NSI stands by its objections to the extent

Bratcher seeks internal correspondence and other documents related to these policies and procedures.

First and foremost, the Requests seeking internal correspondence and other documents related to NSI's policies and procedures clearly are irrelevant and disproportional to the needs of this case. In <u>Douglas v. Kohl's Dep't Stores, Inc.</u>, in which Bratcher's counsel was involved, plaintiff filed a motion to compel when defendant did not comply with requests for production very similar to those at issue here. No. 6:15-cv-1185-Orl-22TBS, 2016 U.S. Dist. LEXIS 54782, at *4–7 (M.D. Fla. Apr. 25, 2016). In her motion, plaintiff made the same arguments that Bratcher makes here, namely, that all of the information requested is relevant because it goes to the issue of treble damages. <u>Id.</u> at *9–10. However, the court denied all of the requests demanding "[c]opies of all internal emails," which included verbatim Request No. 16 at issue here. <u>Id.</u> at *11. The court explained that "plaintiff's argument falls well short of what is required to show relevancy. She has failed to demonstrate why internal emails from Defendant's . . . compliance directors will aid in determining whether Defendant continued to call her after she asked Defendant to stop . . . ." <u>Id.</u> at *10. Further, the court noted that the requests were disproportional, as they would require defendant to review thousands of emails for responsiveness and privilege. <u>Id.</u> at *9. Bratcher's motion should be denied for the same reasons. <u>See also</u> <u>Cedeno v. Navient Solutions, Inc.</u>, No. 16-61049-CIV-UNGARO/OTAZO-REYES, Dkt. 41 (S.D. Fla. Dec. 8, 2016) (denying plaintiff's motion to compel on the same policy and procedure requests raised in Bratcher's Motion, and explaining that "NSI's responses to the discovery requests at issue are sufficient and . . . the additional discovery sought by Plaintiff is neither relevant nor proportional to the needs of the case").

In addition, Bratcher's Requests simply serve no purpose -- except harassment.  NSI has already provided Bratcher with the relevant compliance policies and procedures, along with deposition testimony.  Thus, Bratcher's Requests should be denied as duplicative, unnecessary, irrelevant and harassing.  See Boral Indus., Inc. v. Cont'l Cas. Co., 144 F. App'x 36, 38 (11th Cir. 2005) (affirming denial of a motion to compel because the documents sought "contained information that was 'largely redundant of other correspondence and evidence produced in discovery and presently in the record'"); Klayman v. Freedom's Watch, Inc., No. 07-22433-CIV, 2007 U.S. Dist. LEXIS 91990, at *13 (S.D. Fla. Dec. 14, 2007) ("As plaintiff has already received the information he seeks, he is not entitled to [additional discovery] simply because he does not like the answers it has received on the subject from the individual Defendants at deposition, and through document discovery.").

Furthermore, even setting aside all of these issues, responding to these Requests would impose a drastic burden on NSI.  The type of information that Bratcher seeks would involve an extensive cross-company search for electronically stored information, and many employees of NSI are involved in TCPA compliance, including in-house lawyers.  Bratcher's Request effectively asks NSI to pull every email and document from every employee, and to log all of the privileged items.  And this would all constitute an effort to obtain information that is already in Bratcher's possession in a more complete, finalized form.  See, e.g., Gates v. Travelers Commer. Ins. Co., No. 3:12-CV-349-J-32TEM, 2012 U.S. Dist. LEXIS 176649, at *8 (M.D. Fla. Dec. 12, 2012) ("A district court has discretion to limit discovery of relevant material upon a determination the sought discovery is unreasonably cumulative or duplicative, obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or

expense of the proposed discovery outweighs the likely benefit."). Plaintiff knows this. Her continued pursuit of such material is intended solely to harass NSI.

> **2.    Prior Complaints - Request Nos. 36, 37, 38, And 39, And Interrogatory No. 14**

As noted previously, NSI produced complaints alleging violations of the TCPA, FCCPA, and FDCPA from the past two years. However, NSI stands by its objections to the extent Bratcher seeks information related to informal complaints.

As an initial matter, the requested documents are simply irrelevant to the underlying case here. They do nothing more than demonstrate completely separate incidents vaguely (if at all) related to the type of issues that Bratcher alleges in this matter. This is certainly not enough to compel NSI to produce such documents. However, in the spirit of the meet and confer efforts, NSI provided Bratcher with various complaints naming NSI as a defendant, so Bratcher's Requests are particularly duplicative and unnecessary. See Boral, 144 F. App'x at 38; Klayman, 2007 U.S. Dist. LEXIS 91990, at *13.

Bratcher cites Donnelly v. NCO Fin. Sys., Inc., 263 F.R.D. 500, 505 (N.D. Ill. 1009), for the proposition that "information relating to other complaints . . . is relevant in assessing whether the Defendant acted willfully in violating the TCPA in this case." (Motion to Compel, p. 12.) Importantly, however, the plaintiff in Donnelly only sought evidence of prior lawsuits, which NSI has already produced. Additionally, by producing actual complaints and not merely a list of cases, NSI has gone above and beyond its discovery requirements in light of Donnelly, where the court only required the production of a list of such cases. See Anderson v. Domino's Pizza, Inc., No. 11-cv-902 RBL, 2012 U.S. Dist. LEXIS 45503, at *6 (W.D. Wash. Mar. 30, 2012) (explaining that, in Donnelly, plaintiff only sought a list of cases). Further, while Bratcher is correct that the court in McCaskill v. Navient Solutions, Inc., Case No. 8:15-cv-1559-T-33TBM,

Dkt. 64 at 7 (M.D. Fla. Dec. 31, 2015), required production of complaints by government agencies in addition to evidence of TCPA lawsuits, the court limited this production to <u>formal written</u> complaints, which is a substantial limitation on what Bratcher is seeking here.  Moreover, a review of the case law demonstrates that the decision in <u>McCaskill</u> is the exception, not the rule.  Most cases require only the production of a list of lawsuits and nothing more.  See <u>Pollock v. Northland Grp., Inc.</u>, No. 12-80335-RYSKAMP/HOPKINS, 2012 U.S. Dist. LEXIS 191950, at *2 (S.D. Fla. Aug. 22, 2012); <u>Rubin v. Northland Grp., Inc.</u>, No. 12-80320-RYSKAMP/HOPKINS, 2012 U.S. Dist. LEXIS 191949, at *2 (S.D. Fla. Aug. 13, 2012); <u>Anderson</u>, 2012 U.S. Dist. LEXIS 45503, at *6; <u>Donnelly</u>, 263 F.R.D. at 505.

In addition to being irrelevant, duplicative and unnecessary, and similar to the Requests regarding NSI's policies and procedures, these Requests are not proportional to the needs of the case, as they would impose a significant burden on NSI.  Many NSI employees may possess the "formal or informal, whether in writing or not" information that Bratcher seeks.  Bratcher's Requests effectively ask NSI to pull every email and document from every NSI employee that could be involved in a "complaint."  This is a task that is surely unduly burdensome, considering the limited value such information would provide Bratcher.  See <u>Gates</u>, 2012 U.S. Dist. LEXIS 176649, at *8.

Finally, the requested documents contain highly sensitive confidential and proprietary information.  NSI should not be forced to produce such documents. See <u>Cedeno v. Navient Solutions, Inc.</u>, No. 16-61049-CIV-UNGARO/OTAZO-REYES, Dkt. 41 (S.D. Fla. Dec. 8, 2016) (denying plaintiff's motion to compel on the same complaint requests raised in Bratcher's Motion, and explaining that "NSI's responses to the discovery requests at

issue are sufficient and . . . the additional discovery sought by Plaintiff is neither relevant nor proportional to the needs of the case").

### 3. The Phone Calls And NSI's Dialing Equipment - Request Nos. 17, 27, And 34, And Interrogatory No. 3

As explained previously, Plaintiff has all information she needs regarding the phone calls at issue. NSI has agreed to stipulate that the phone calls to Plaintiff were made with an Automatic Telephone Dialing System, and NSI produced the call log listing the calls made to Bratcher. Thus, these issues have been resolved.

### C. Bratcher Is Not Entitled to a Privilege Log.

Bratcher seeks a privilege log for all Requests to which NSI has objected on the basis of attorney-client privilege. This misses the point, however. These Requests are extremely overbroad, and seek information such as "all internal emails" related to NSI's overall TCPA compliance program, and "internal memoranda, bulletins, letters, committee or team reports, emails, meeting minutes, or other documents" regarding the prevention of TCPA violations. Bratcher has refused to limit the scope of these Requests. As a result, NSI has no choice but to stand by its privilege objections. Moreover, given that these Requests are so overbroad, Bratcher is not entitled to a privilege log because the time required for its creation would be grossly disproportionate to the needs of Bratcher's case.

### D. Pursuant To Fed. R. Civ. P. Rule 37(a)(5)(B), The Court Should Order Bratcher To Pay NSI's Costs And Attorneys' Fees Incurred In Opposing The Motion.

Under Rule 37(a)(5)(B), when a motion to compel is denied, the movant is required to pay costs and fees accrued by the opposing party in responding to the motion:

> If the motion [to compel discovery] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party

or deponent who opposed the motion its reasonable expenses incurred in opposing
the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(B). This applies with particular force if the motion is frivolous, vexatious and/or brought for purposes of harassment. See Schumann v. Collier Anesthesia, P.A., No. 2:12-CV-347-FTM-29CM, 2014 WL 1230644, at *3 (M.D. Fla. Mar. 25, 2014) (agreeing to hold a hearing on awarding fees to the nonmovant for a frivolous motion). Here, the Motion serves no legitimate purpose, and should not have been brought. Its sole purpose is to harass NSI, and Plaintiff knows it. Indeed, as noted above, Bratcher's counsel had a motion to compel over the very same issues denied recently. See Cedeno v. Navient Solutions, Inc., No. 16-61049-CIV-UNGARO/OTAZO-REYES, Dkt. 41 (S.D. Fla. Dec. 8, 2016). Accordingly, the Court should award NSI's costs and attorneys' fees incurred in opposing the Motion.

**IV.** <u>**Conclusion**</u>

For the foregoing reasons, NSI respectfully requests that this Court deny the Motion and grant an award of costs and attorneys' fees on this Response.

Respectfully submitted,

/s/ Rachel A. Morris
Rachel A. Morris, Esq.
Florida Bar No. 0091498
Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3350 Buschwood Park Drive, Suite 195
Tampa, FL 33618
Telephone:   (813) 890-2469
Facsimile:    (866) 466-3140
dvanhoose@sessions.legal
ramorris@sessions.legal

Attorneys for Defendant,
Navient Solutions, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 31, 2017, a copy of the was served through the court electronic system including the party  listed below:

William Peerce Howard, Esq.
Stefan A. Alvarez, Esq.
The Consumer Protection Firm, PLLC
210-A South MacDill Avenue
Tampa, FL  33609

/s/ Rachel A. Morris
Attorney

-13-