**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MELONIE BRATCHER,

    Plaintiff,

v.                                                                      CASE NO.: 3:16-cv-00519-HES-JBT

NAVIENT SOLUTIONS, LLC,

    Defendant.

---

**RESPONSE TO DEFENDANT, NAVIENT SOLUTIONS, LLC'S, MOTION FOR PROTECTIVE ORDER (DOC. 19) AND SUPPORTING MEMORANDUM OF LAW**

---

Plaintiff, Melonie Bratcher, by and through her undersigned counsel, respectfully submits this response in opposition to Defendant, Navient Solution LLC's ("NSL"), Motion for Protective Order (Doc. 19) and states the following in opposition:

**I.    INTRODUCTION**

"I'm already taking care of my student loans, and I would appreciate if you guys would stop calling me…I don't want you guys calling me again.  Thank you very much."  Plaintiff then immediately hung up the phone.  This is what Plaintiff told Defendant during a recorded conversation on March 14, 2016.  Four days later, on March 18, 2016, during another recorded conversation with a collection agent for Defendant, Plaintiff again demanded that the calls stop, stating, "I asked you guys not to call me anymore…Don't call me again."  She then immediately hung up the phone on Defendant.  Defendant ignored Plaintiff's repeated pleas for the calls to stop and proceeded to robocall Plaintiff sixty-three times after the recorded conversation on March 14, 2016, and another forty-seven times following the conversation on March 18, 2016.

With no way to make the calls stop, Plaintiff filed her Complaint (Doc. 1) on April 28, 2016, alleging Defendant violated the Telephone Consumer Protection Act ("TCPA"), Fair Debt Collection Practices Act ("FDCPA"), and the Florida Consumer Collection Practices ("FCCPA"). This case is about the sixty-three times Defendant called Plaintiff potentially in willful and knowing violation of the TCPA, as well as the harassing, oppressive, and abusive nature of those phone calls in violation of the FDCPA and FCCPA.

II.     **BACKGROUND**

The depositions sought by Plaintiff and properly noticed to Defendant on February 23, 2017 are wholly relevant to Plaintiff's claims in this matter and highly proportional to the needs of the case. Quite simply, the three supervisors noticed for deposition are exactly the sort of lay witnesses who can provide meaningful testimony that either proves or disproves Plaintiff's contention that Defendant systematically refuses to properly and effectively document consumers' revocations of consent, despite what the letter of its policies and procedures might reflect. Their testimony is vital to Plaintiff's ability to prove the potential willful or knowing nature of Defendant's violations under the TCPA, as well as damages under the FDCPA and FCCPA. Yet, Defendant and its counsel, who will only produce professional witnesses designated as a corporate representative, have routinely refused to provide any fact witness for deposition in every case the undersigned has litigated against them.

This is unfortunately becoming an all too familiar pattern of behavior by both Defendant and its counsel, whose actions precipitating the filing of the instant Motion (Doc. 19) necessitate bringing to light several misstatements of fact, omissions from the record, and demonstrate a general disregard for the underpinnings of Local Rule 2.04(h)—a rule established to encourage cooperation, civility and to, ultimately, avoid motions like the one filed by the Defendant.

**A. Defendant's Motion (Doc. 19) Improperly Presents Several Issues to the Court Never Raised by Defendant in Any Correspondence Between the Parties or During the Parties 3.01(g) Conference**

In short, notwithstanding Defendant's flawed position regarding proportional discovery in this case, which is comprehensively addressed in Plaintiff's argument below, Defendant's Motion (Doc. 19) improperly presents several issues to the Court in support of its motion that were never discussed, or even raised by opposing counsel, during the parties' 3.01(g) conference held on March 3, 2017, or in any other correspondence between the parties.

Pursuant to Federal Rule of Civil Procedure 30(b)(1), on February 23, 2017, Plaintiff served Defendant with Notices of Deposition for: (1) "Angela Kamionka, Head of the Office of Customer Advocate" for NSL; (2) "Paty Peterson, a Dialer Team Supervisor" for NSL; and (3) "Josh Dries, a Dialer Team Supervisor" for NSL.  (*See* Composite **Exhibit "A"**).  Contrary to Defendant's mischaracterization that "Bratcher made no effort to determine NSL's or the witnesses' availability" (Doc. 19), Plaintiff made every effort to accommodate and coordinate the dates and times for each of the depositions.  Accompanying Plaintiff's Notices of Deposition served on February 23, 2017, Plaintiff also included a cover letter to opposing counsel informing Defendant "In the interest of judicial economy and efficiency, I've scheduled dates for these video depositions."  (*See* **Exhibit "B"**).  Plaintiff's correspondence went on to encourage Defendant, "…if there happens to be any conflict with the proposes dates and times currently scheduled, we are kindly requesting alternative deposition dates *within the next 72 hours*." (*See* **Exhibit "B"**) (emphasis added).  On February 24, 2017, opposing counsel emailed the undersigned, "Please let me know your availability for a good faith conference next week to discuss the depositions, which we believe to be unnecessary to this case and disproportionate to the needs of discovery." (*See* **Exhibit "C"**).  Defendant made no mention of any issues with availability, and did not provide

Plaintiff with alternative dates and times, as Plaintiff's February 23 correspondence so courteously requested.

Moreover, the parties held a 3.01(g) conference on March 3, 2017, during which Defendant never once raised the issue of availability. In fact, Defendant's improper objections to Plaintiff's Notices, served mere hours before filing its Motion (Doc. 19) on March 6, 2017 and nearly two weeks after Plaintiff properly served her notices, was the first time Defendant *ever* raised the issue of NSL, its counsel, or any of the witnesses' availability for deposition. Opposing counsel never once mentioned an issue or concern with availability during repeated email correspondence with Plaintiff or during the parties' 3.01(g) conference held on March 3, 2017. Even more disheartening, Defendant's statement that "…when pressed for a reason as to why she needs to take these depositions, Bratcher refused to meaningfully explain" (Doc. 19) is nothing more than a brazen distortion of the facts. Following the parties' 3.01(g) conference on March 3, 2017, Plaintiff, while under no obligation to do so, voluntarily provided a written explanation confirming her reasons for deposing the noticed individuals. In a March 6, 2017 email correspondence, Plaintiff's counsel explained:

> I am under no obligation to provide any sort of written documentation outlining our case strategy or the potential line of questions for a fact witness before we have an opportunity to depose them. Moreover, NSL's own corporate representative identified these 3 individuals as the persons best suited to testify about several areas of inquiry that she was[,] at her own admission[,] unable to answer during deposition. The testimony of the 3 individual NSL employees identified and properly noticed for deposition is highly relevant and essential to our ability to put on a case for knowing or willful violations of the TCPA, as well as actual and punitive damages under the FCCPA. Only four days ago, this very Court made it abundantly clear that these issues are relevant to Plaintiff's claims and proportional to the needs of her case in its recent Order [Doc. 18] granting Plaintiff's Motion to Compel and ordering Defendant to show cause why Plaintiff should not be awarded her reasonable expenses.

(*See* **Exhibit "C"**).

4

Prior to the filing of its Motion (Doc. 19), Defendant never raised any purported issues related to the availability of the three witnesses noticed for deposition or the date, time and location of the depositions in any correspondence between the parties or during the 3.01(g) conference held on March 3, 2017.

### B. Deposition Testimony from the Three NSL Supervisors is Vitally Important for Plaintiff to Prove Willful or Knowing Violations of the TCPA and to Establish Damages Under the FDCPA and FCCPA

Not surprisingly, similar to Defendant's meritless argument in support of its refusal to provide responses to Plaintiff's straightforward discovery requests at issue in her Motion to Compel (Doc. 13), Defendant is now dismissively characterizing Plaintiff's requested discovery depositions as "unnecessary and will add nothing to Bratcher's ability to prove her claims." (Doc. 19 at 4). Akin to this Court's rationale in its recent Order granting Plaintiff's Motion to Compel (Doc. 18), the deposition testimony from the three NSL supervisors is equally of paramount importance to proving the willful or knowing nature of Defendant's TCPA violations, as well as to Plaintiff's ability to establish damages under the FDCPA and FCCPA.

On December 12, 2016, Plaintiff served its Notice of Taking Video Deposition of Corporate Representative from Defendant Pursuant to Federal Rules of Civil Procedure 30(b)(6), scheduling the deposition for January 18, 2017. An amended Notice was served on January 25, 2017, rescheduling the deposition to January 27, 2017. On January 27, 2017, Plaintiff deposed, Cheryl A. Dillon, a collection direct mail manager for Defendant, in Wilmington, DE. Despite Defendant's decision to not file a protective order regarding any area of inquiry, Defendant's designated corporate representative was woefully unprepared to testify about several areas of inquiry, particularly with respect to prior complaints from consumers regarding similar behavior by Defendant, similar requests for calls to stop, or the dialer campaign used to determine the

frequency of robocalls to Plaintiff.  In response to these lines of questioning, Ms. Dillon was unable to not only answer specific questions noticed to the witness, but she was also unable to provide any names of individuals who could answer the questions presented.  She was further unable to provide details of the duties in other departments that made decisions relevant to Plaintiff's account.  Instead, she simply identified the departments, such as the office of customer advocate and dialer team.

Due to substantial deficiencies with Ms. Dillon's testimony at the January 27, 2017 deposition, on February 23, 2017, pursuant to Federal Rules of Civil Procedure 30(b)(1), Plaintiff gave Notice of Taking Video Deposition of Paty Peterson, Angela Kamionka, and Josh Dries for March 10, 13 and 14, 2017, respectively.  In fact, as previously mentioned, Defendant's own corporate representative identified "the customer advocate office" and its supervisor as the best person to testify about Areas of Inquiry 25 and 26 regarding prior complaints, formal or informal, alleging violations of state and federal law relating to the collection of consumer debts, as well as prior requests by individuals not to be called by the Defendant.  She also testified that supervisors of Defendant's dialer team would be the best individuals to testify about the dialer campaign implemented on Plaintiff's account, which would include the frequency of robocalls to Plaintiff following her explicit request for the calls to stop, as well as each and every phone number used by Defendant to robocall Plaintiff's cellular telephone number.[1]  Without delving into Plaintiff's

---

[1] It's unclear as to why Defendant flippantly included in a footnote that it "suspects that Bratcher's counsel is aware of Dries and Kamionka from other lawsuits" as if that's somehow a legitimate defense for refusing to produce a properly noticed witness for deposition.  The Federal Rules of Civil Procedure allow broad discretion in noticing parties for deposition under Rule 30(b)(1), allowing deponents to be identified either by name, or where the name is unknown, by "a general description sufficient to identify the person or the particular class or group to which the person belongs." Fed. R. Civ. P. 30(b)(1).  Under these broad requirements, there is no requirement that the party noticing a potential deponent learn of their identity strictly through the case at hand.  With that in mind, there is nothing nefarious or suspicious about how Plaintiff obtained the names of the individual supervisors at NSL.  On January 27, 2017, Defendant's corporate representative testified that supervisors for the office of customer advocate and the dialer team would be the best individuals to testify about several areas of inquiry.  Due to what appears to be Defendant's

case strategy and potential line of questioning, the information possessed by these witnesses is essential to proving willful or knowing violations of the TCPA and damages under the FDCPA and FCCPA, which potentially include punitive damages.

Defendant clings to the argument that NSI's corporate representative deposition testimony should be enough for Plaintiff. However, Defendant's professional witness was unable to provide any answers to simple questions pertaining to prior complaints, requests from consumers for calls to stop, and details on the dialing campaign determining when and how often Defendant robocalled Plaintiff after she revoked her consent to receive such calls. As a result of Defendant's corporate representative's deficient deposition testimony, the depositions of the three NSL supervisors are not only abundantly proportional to the needs of this case and highly likely to lead to admissible evidence, but wholly necessary in order to garner the most basic responses pertaining to several areas of inquiry, including but not limited to Areas of Inquiry 10, 25 and 26.[2] The willful or knowing nature of Defendant's violations of the TCPA, along with its frequency and persistence of noncompliance with the FDCPA and FCCPA, are exactly what is at issue in this case.

Defendant called Plaintiff sixty-three times over the span of about a month after she unequivocally revoked her consent to be called on more than one occasion. On March 14, 2016, Plaintiff told Defendant in no uncertain terms, "I'm already taking care of my student loans, and I

---

institutional refusal to properly and effectively document consumer requests for robocalls to stop, the undersigned has in fact previously obtained the names of those supervisors in separate lawsuits; most recently, in *Cedeno v. Navient Solutions, LLC*, which is currently set for trial in April 2017 and has cross motions for partial summary judgment pending in the District Court for the Southern District of Florida. *See Cedeno v. Navient Solutions, LLC*, No. 0:16-cv-61049-UU (S.D. Fla. filed May 17, 2016). Consequently, the identity of Josh Dries and Angela Kamionka—and their respective positions as supervisors at NSL—are part of the public record. *Id.* at Doc. 51-4, p. 68, 182. Lastly, once again, Defendant never raised an issue or concern with the names included in Plaintiff's Notices during repeated email correspondence or the parties' 3.01(g) conference, which makes it not only a particularly improper objection, but also procedurally improper to even be raised at this juncture. Defendant's motion (Doc. 19) was the *first time* Plaintiff was made aware of Defendant's "issues."

[2] Defendant cannot in good faith provide an unprepared witness for deposition, pursuant to Fed. R. Civ. P. 30(b)(6), on one hand, and then contemporaneously challenge that the depositions of the supervisors, who were identified as possessing the pertinent information, are overly burdensome and disproportional to the needs of the case.

would appreciate if you guys would stop calling me…I don't want you guys calling me again. Thank you very much." She then immediately hung up the phone. Four days later, on March 18, 2016, Plaintiff told Defendant, "I asked you guys not to call me anymore…Don't call me again." Again, she immediately hung up the phone. Despite Plaintiff's clear revocations of consent, Plaintiff believes Defendant willingly and knowingly refused to document her account accordingly and proceeded to robocall her more than sixty-three times, only stopping when Plaintiff filed her Complaint (Doc. 1). At best, this motion is yet another component of Defendant's litigation strategy designed to delay, obstruct, and blockade at every turn. At worst, it is an example of purposeful misrepresentations of fact to the Court and distorted accounts of conversations and correspondence between the parties, all in an effort to stonewall Plaintiff from deposing basic fact witnesses.

Unfortunately, this "blockade" business model of refusing to allow any of Defendant's individual debt collectors or supervisors to be deposed is not isolated to just this case. It seems to pervade every matter between the undersigned and NSL. Of course, this is also not the first time that Plaintiff and this Court have been confronted with Defendant's unrequited refusal to cooperate with basic discovery. Aside from this Court's most recent Order granting Plaintiff's Motion to Compel Discovery Responses (Doc. 18), the undersigned has also faced this exact tactic of refusing to provide fact witnesses for deposition in every other matter he has litigated with Defendant and its counsel. Most recently, in *Cedeno v. Navient Solutions, LLC*, Magistrate Judge Otazo-Reyes denied a nearly identical motion for protective order filed by Defendant and defense counsel finding that the deposition of a fact witness noticed pursuant to Fed. R. Civ. P 30(b)(1) is "relevant and proportional to the needs of the case." *Cedeno v. Navient Solutions, LLC*, No. 0:16-

cv-61049-UU, Doc. 41 at 1.[3] Contrary to Defendant's mischaracterization of these depositions as being "entirely unnecessary and burdensome and clearly intended to harass NSL," the only unnecessary burden imposed in this matter is Defendant's continued refusal to cooperate with basic discovery, culminating with its baseless Motion (Doc. 19) needlessly involving the Court. Regrettably, it appears as though only court intervention will put an end to this type of conduct.

### III. ARGUMENT

"As a general rule, courts will not grant protective orders that prohibit the taking of deposition testimony." *U.S. E.E.O.C. v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) (internal citations omitted). The Defendant's eleventh-hour motion for protective order should be denied.

#### A. Defendant's Motion (Doc. 19) Violates Local Rule 3.01(g) and Should Therefore be Denied

As an initial matter, the motion is untimely in that Plaintiff served her operative notice of deposition on February 23, 2017—nearly two weeks prior Defendant's Motion (Doc. 19). Moreover, Defendant asserts baseless arguments in support of its Motion (Doc. 19) that Plaintiff failed to determine the availability of NSL, its counsel, or the three witnesses are particularly meritless because Defendant never conferred with Plaintiff about any such issues. This alone should result in denial of the relief sought. M.D. Fla. L.R. 3.01(g); *Marler v. U-Store-It Mini Warehouse Co.*, 2011 WL 1430262, *1 (S.D. Fla. 2011) ("filing a motion before having an actual substantive discussion with opposing counsel does not amount to a conference or consultation" as required by the Local Rule's conferral requirements). Consequently, the Defendant's Motion

---

[3] Unfortunately, following the court's denial of defendant's motion for protective order after the expiration of the discovery deadline, plaintiff's subsequent request for leave to depose the noticed lay witness was denied because the discovery deadline had already expired. *Cedeno v. Navient Solutions, LLC*, No. 0:16-cv-61049-UU, Doc. 45.

9

violates certain provisions of Local Rule 3.01(g), and therefore Defendant's Motion be denied, as violations of Local Rules in general require denial because "a valid local rule has the force of law." *Cheshire v. Bank of Am., NA*, 351 F. App'x 386, 388 (11th Cir. 2009); *see also Zaklama v. Mount Sinai Med. Ctr.*, 906 F.2d 645, 649 (11th Cir. 1990) (affirming the lower court's denial of a motion that failed to comply with applicable local rules, holding that "[p]ractioners must adhere to applicable local rules in order for those local rules to have effect and federal courts by enforcement will preserve the integrity of local rules, absent problems of a constitutional dimension."); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329-30 (6th Cir. 1973), *cert. denied*, 414 U.S. 858 (1973) (holding that the district court properly denied a motion to compel for failure to adhere to the requirement of the local rules that the moving party must "notify the court of its attempts to resolve the controversy"); *Barcomb v. Fiserv Health, Inc.*, No. 8:08-cv-1790-T-23TGW, 2009 WL 2765468, at *4 (M.D. Fla. Aug. 27, 2009) (finding the failure to comply with Local Rule 3.01(a) rendered a motion "patently deficient"); *Dyett v. North Broward Hosp. Dist.*, 2004 WL 5320628, *1 (S.D. Fla. 2004); *Longariello v. School Bd. of Monroe County*, 1996 LEXIS 21661, at *6 (S.D. Fla. 1996) (denying motion for summary judgment in part upon movant's failure to comply with Local Rule 7.5 by not filing a concise statement of facts); *Hoglund v. Limbach Constructors, Inc.*, 1998 LEXIS 8577 at *9-14 (S.D. Fla. 1998) (holding that a party's failure to comply with clear mandate of Local Rule 26.1.G.6(b) constituted waiver of party's privilege objection over production of her diary); *Beer Nuts, Inc. v. King Nut Co.*, 477 F.2d 326, 329-30 (6th Cir.), *cert. denied*, 414 U.S. 858 (1973). In fact, as is shown by Exhibits "B" and "C" to this memorandum, Defense counsel *never once* raised any issue regarding availability, making the Defendant's assertion particularly disingenuous, and their Certificate of Good Faith Conference misleading and patently untrue.

### B. The Depositions Sought by Plaintiff are Necessary, Present no Undue Burden or Hardship to Defendant or the Witnesses, and are Proportional to the Needs of the Case

The Defendant's position that this discovery is disproportionate to the needs of the case is equally well off base, a conclusion punctuated by the fact that the Defendant was unable to cite even a *single* opinion granting a protective order under similarly unavailing circumstances. While the Defendant has contended that a 30(b)(6) deposition is all that is needed in this case, this unprecedented argument deliberately omits the fact that a 30(b)(6) deposition is designed only to establish the official position of a corporate party to litigation through a well-prepared, professional witness (typically an executive or manager) that often lacks personal knowledge of the matters testified to. *See e.g., Miller v. Union Pac. R. Co.*, No. CIV.A.06-2399-JARDJW, 2008 WL 4724471, at *2 (D. Kan. Oct. 24, 2008) (noting that "the designated corporate representative does not give her or personal opinion like an individual does, but rather presents the corporation's position on the topic").

In other words, the purpose of a 30(b)(6) deposition is solely to require a corporation to put forth a "party line" that it can be bound to, not to supplant a litigant's right to question operational-level employees with actual personal involvement with the matters at issue in the litigation. *See N. States Power Co. v. City of Ashland, Wis.*, No. 12-CV-602-BBC, 2015 WL 1745880, at *2 (W.D. Wis. April 16, 2015) ("Fed.R.Civ.P. 30(b)(6) provides a mechanism for finding information known to an organization; it does not prohibit employees from testifying about their own activities or their personal knowledge related to the organization."); *Washburn v. Gymboree Retail Stores, Inc.*, No. C11-822RSL, 2012 WL 5360978, at *6 (W.D. Wash. Oct. 30, 2012) (noting the problems created when a corporate representative gave false testimony by "refus[ing] to deviate from the [corporation's] party line response"). Furthermore, any concern of duplicative discovery is without

merit. In distinguishing the different roles between a 30(b)(6) deposition and a 30(b)(1) deposition, a party is "entitled to tie down the definitive positions" of the opposing party, "[e]ven if the substance of the information ultimately provided mirrors that of the testimony" previous acquired. *New Jersey v. Sprint Corp.*, No. 03-20710JWL, 2010 WL 610671, at *2 (D. Kan. Feb. 19, 2010).[4] To accept the Defendant's arguments as to the requested protective order would be effectively to hold that the Plaintiff is not entitled to the best evidence that might contradict the "party line" testimony of the Defendant's corporate deponent, a situation that would both be manifestly unfair and contrary to the principles of due process.

That is not the only fatal flaw with the Defendant's request for a protective order. The Defendant also cites no particular hardship that would be suffered by NSL, its counsel, or any of the three witnesses identified in Plaintiff's Notices, other than the ordinary inconvenience that any person might suffer in attending a deposition. Such arguments are manifestly insufficient to warrant issuance of a protective order under well-established law. *See, e.g., Bay Area Healthcare Advisors, LLC v. PremierTox 2.0, Inc.*, No. 1:16-CV-00020-HBB, 2016 WL 4203594, at *2 (W.D. Ky. Aug. 9, 2016) ([G]ood cause is not established by merely showing that discovery might involve inconvenience or expense."); *Smith v. Wal-Mart Stores, Inc.*, No. 2:13-CV-1597-MMD-VCF, 2014 WL 2770691, at *2 (D. Nev. June 17, 2014) ("A mere showing that the discovery may involve some inconvenience or expense does not establish good cause."). Furthermore, the Defendant's conclusory assertions as to the supervisors' purported lack of knowledge are particularly problematic in this instance, as they are based solely on unsupported, self-serving

---

[4] The *New Jersey* court went further to conclude that the "plaintiff should not be prevented from questioning a live witness in a deposition setting just because the topics proposed are similar to written requests for admissions already served. Such a result would essentially limit a plaintiff to the first form of discovery served, since topics are bound to overlap." *New Jersey*, 2010 WL 610671, at *2.

conclusions made by Defendant and its counsel. *See Duncan v. Husted*, No. 2:13-CV-1157, 2014 WL 4659863, at *2 (S.D. Ohio Sept. 17, 2014), *on reconsideration in part*, No. 2:13-CV-1157, 2015 WL 631103 (S.D. Ohio Feb. 12, 2015) (noting that it is "unreasonable burden" not just "general burden" that must be established to warrant a protective order and that a "'particular and specific demonstration of fact,'" such as an affidavit, is required to justify a protective order).

Moreover, these assertions do not even come close to foreclosing the usefulness of the supervisors' testimony in this case. It is almost certain that each supervisor has a significant recollection of the Defendant's policies and procedures, as well as information regarding how well any such regulations were adhered to. Such evidence could be used by the Plaintiff to challenge the Defendant's "party line" on key issues and prove critical to putting on a case for willful or knowing violations of the TCPA, as well as damages under the FDCPA and FCCPA, which potentially include punitive damages. Further, the Plaintiff should not be required to reveal, as a condition of taking a routine deposition, every detail of the intended lines of questioning and thus disclose attorney work-product by laying out a "road map" of every expected topic to be asked at the deposition. Here, the Plaintiff is well below the ten depositions that pursuant to Rule 30(a)(2)(A) may be taken without leave of Court, and leeway should be granted to Plaintiff's counsel to conduct discovery in the case consistent with the best interests of his client.

### IV. CONCLUSION

As explained in detail above, Defendant's Motion for a Protective Order (Doc. 19) should be denied, and Defendant should be ordered to cooperate appropriately in the discovery process to resolve any lingering disputes.

**WHEREFORE**, Plaintiff, Melonie Bratcher, respectfully requests this Honorable Court to enter an order denying Defendant's Motion for Protective Order and requiring Defendant to

either produce these witnesses for telephonic depositions on the previously scheduled dates or, in the alternative, to reset the depositions prior to the March 17, 2017 discovery deadline in preferred locations provided by Defendant, as well as for Attorney's Fees, and such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 8th, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, who will send a notice of electronic filing to all counsel of record.

> s/*Stefan A. Alvarez*
> Stefan A. Alvarez, Esquire
> Florida Bar No: 100681
> William Peerce Howard, Esquire
> Florida Bar No: 0103330
> THE CONSUMER PROTECTION FIRM
> 210-A South MacDill Avenue
> Tampa, FL 33609
> Telephone: (813) 220-2954
> Stefan@TheConsumerProtectionFirm.com
> Billy@TheConsumerProtectionFirm.com
> *Counsel for Plaintiff*