**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| MELONIE BRATCHER,<br><br>        Plaintiff,<br><br>v.<br><br>NAVIENT SOLUTIONS, INC.,<br><br>        Defendant. | No. 3:16-cv-00519-HES-JBT |

**DEFENDANT NAVIENT SOLUTIONS, LLC'S
OBJECTIONS TO ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL**

Defendant Navient Solutions, LLC ("NSL"), by and through undersigned counsel, hereby objects to the March 2, 2017 Order (the "Order"), issued by the Honorable Joel B. Toomey (the "Magistrate Judge") granting Plaintiff's Motion to Compel (the "Motion"), and states as follows:

**I.    Introduction**

NSL is a servicer of student loans. In her Complaint, plaintiff Melonie Bratcher ("Bratcher") challenges telephone calls that NSL made to her in an effort to collect outstanding amounts on her federal student loans. Bratcher asserts a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), which governs, among other things, the use of automated telephone dialing equipment to make calls to cellular telephones. Such calls may be made with the recipient's "prior express consent," and calls made without the requisite consent are subject to statutory damages, in the amount of $500 for negligent violations or up to $1,500 for willful violations. She also asserts claims under the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, et seq. (the "FCCPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA"), which govern debt collection practices and prohibit debt collectors from using abusive, unfair or deceptive practices to collect debts.

Notably, all of these claims arise from only 74 phone calls, made over a period of approximately 20 months.[1]

In the Order, the Magistrate Judge concluded that NSL should be required to respond to Bratcher's Request for Production No. 36 (the "Request") and Interrogatory No. 14 (the "Interrogatory"), which seek extensive information about complaints asserted by other student loan borrowers about telephone calls made by NSI. The Request reads as follows:

> Prior complaints, formal or informal, whether in writing or not, made by consumers or their attorneys, concerning alleged violations of state and federal law relating to calls using an "automatic telephone dialing system," "artificial voice," and/or prerecorded voice.

Meanwhile, the Interrogatory states:

> Identify any prior complaints, formal or informal, whether in writing or not, received from any governmental agency, concerning alleged violations of federal law relating to telephone calls to consumers . . . .

During the meet-and-confer process, Bratcher agreed to limit the Request and the Interrogatory, as follows:

> [O]nly those prior complaints, both formal and informal, for just the past two years, which counsel for the Defendant knows are stored and readily accessible in [Defendant's] CSI Database [the "Complaint Information"] maintained by [Defendant's] Office of Customer Advocate and its Supervisor, Angela Kamionka ["Kamionka"].

In opposing the Motion, NSL argued, and still maintains, that this limitation is not meaningful as a matter of fact and law. The Magistrate Judge disagreed, however, and issued the Order. NSL now respectfully asks the Court to sustain NSL's Objections and overrule the Order for several reasons.

---

[1] In response to this Motion, Plaintiff may argue NSL's call count is incorrect. However, although Plaintiff believes NSL made more calls, NSL's records show the total call count in this case is 74.

First, the Order does not take into account that NSL has already undertaken the burden of producing several thousand pages of "formal complaints" – i.e., lawsuits filed in various courts that contain allegations under the TCPA, FDCPA and/or FCCPA. Given that NSL already has produced these documents, the burden of culling the CSI Database for duplicative and cumulative information is unjustified. Moreover, and notably, Bratcher already has deposed NSL's corporate representative on the issue of prior complaints, as well as Kamionka. Finally, given the legal standards governing Bratcher's claims in the Eleventh Circuit, the Complaint Information cannot serve any purpose here. Thus, her insistence on production clearly is an attempt to harass, disparage and prejudice NSL.

Second, because the Order does not take into account NSL's production, it is contrary to well-settled case law, and requires a further production that is disproportionate to the needs of Bratcher's case. For instance, a court in the Southern District of Florida very recently denied opposing counsel's request for the Complaint Information, finding that, because NSL already produced court-filed complaints, the additional discovery was unnecessary. This is for good reason, as courts in this district and elsewhere rarely require more than a list of prior lawsuits filed against defendants. And, even where courts require more than a list, they generally limit such productions to formal, written complaints.

Third, by its nature, some of the Complaint Information consists of private and confidential information. The entries in the Complaint Information generally pertain to particular borrowers, and some relate to borrowers' circumstance with respect to outstanding student loans. Accordingly, to some extent, the Complaint Information contains borrowers' names, addresses, financial information, etc. Further, prior to production, this information would

have to be redacted on a line-by-line basis (which, in contrast, is not the case for complaints filed in court, which NSL has produced).

In addition, Bratcher has sufficient information from the production already made and the depositions already taken to pursue her claims. The Court therefore should sustain NSL's Objections and overrule the Order.

## I.     Background

### A.     NSL And Bratcher's Loans

NSL is engaged in the business of servicing student loans, including federal loans administered under the Federal Family Education Loan Program ("FFELP"). The servicing of FFELP loans is governed by a complex set of federal regulations. See 34 C.F.R. §§ 682.400–682.423. At a minimum, when loans are delinquent, NSL is required to contact the borrowers. 34 C.F.R. § 682.411(c)–(f). Here, Bratcher is the borrower on two FFELP loans serviced by NSL. When Bratcher became delinquent on her loans, NSL began calling her to assist her in resolving the issue.

### B.     The Discovery Proceedings

On August 9, 2016, the Court issued a Case Management and Scheduling Order, setting the discovery cutoff for March 17, 2017. Over a month later, on September 12, 2016, Bratcher propounded her discovery requests to NSL, which included fourteen Interrogatories, thirty-nine Requests for Production and twenty-two Requests for Admission. NSL timely responded to these discovery requests on October 17, 2016.

Approximately three months later, on January 5, 2017, Bratcher emailed NSL to schedule a Rule 3.01(g) conference. The conference took place on January 10, 2017. Although NSL maintains that its original responses were sufficient, in the spirit of cooperation, and in an attempt to avoid unnecessary motion practice, NSL agreed to make a supplemental production of

documents and to provide certain supplemental written responses. While NSL was working to produce the documents, Bratcher filed the Motion, which was directed to: (1) the Complaint Information; (2) information related to NSL's policies and procedures, and (3) information regarding the phone calls that NSL made to her.

On February 2, 2017, the Magistrate Judge took the Motion under advisement and ordered the parties to confer and provide a Joint Notice regarding any outstanding discovery issues by February 17, 2017. As NSL had explained in its Response to Bratcher's Motion, the issues had already been largely resolved, in accordance with NSL's assurances before Bratcher filed the Motion. Among the issues that had been resolved were Bratcher's requests for prior lawsuits against NSL. Nevertheless, Bratcher still sought to pursue the Request and Interrogatory. Meanwhile, Bratcher took the deposition of NSL's corporate representative on January 27, 2017, including on the subject of prior complaints, and also took the deposition of Kamionka on March 11, 2017.

## II. Standard of Review

"A party may object to a magistrate judge's order on a non-dispositive pre-trial matter within fourteen days after service of the order." Tempay, Inc. v. Biltres Staffing of Tampa Bay, LLC, 929 F. Supp. 2d 1255, 1259 (M.D. Fla. 2013). "The district judge shall make a de novo determination in accordance with the rules and after review of any written objections." Tari v. Collier County, 846 F. Supp. 973, 974 (M.D. Fla. 1994) (citing 28 U.S.C. § 636(b)(1)(B)). "The district court 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.'" Id. (citing 28 U.S.C. § 636(b)(1)(C)).

## III. Objections

    A.    **NSL Objects To The Conclusion That The Complaint Information Is Relevant To Bratcher's Claims.**

Pursuant to Federal Rule of Civil Procedure 26(b)(2), the Court shall limit the frequency or extent of use of discovery methods otherwise permitted under the federal and local rules if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). The case law construing this rule is clear that, where a party has already provided extensive information on a topic, further discovery on that topic is improper if it will only result in providing the same information in a different form. See Boral Indus., Inc. v. Cont'l Cas. Co., 144 F. App'x 36, 38 (11th Cir. 2005) (affirming denial of a motion to compel because the documents sought "contained information that was 'largely redundant of other correspondence and evidence produced in discovery and presently in the record'"). That is the circumstance presented here.

Indeed, very recently, in Cedeno v. Navient Solutions, Inc., the court rejected plaintiff's request for production of the Complaint Information where NSL had already produced copies of complaints filed in lawsuits. No. 16-61049-CIV-UNGARO/OTAZO-REYES, Dkt. 41 (S.D. Fla. Dec. 8, 2016). Notably, the plaintiff was represented by Bratcher's counsel, and the procedural posture of the action was practically identical to that here. Because NSL had already produced the complaints filed in lawsuits, the court denied plaintiff's request for the Complaint Information, holding that "NS[L]'s responses to the discovery requests at issue are sufficient and . . . the additional discovery sought by Plaintiff is [not] relevant . . . ." Id.

Here, the Order does not reflect that NSL produced these complaints, and that Bratcher deposed NSL's corporate representative (and, since the issuance of the Order, Bratcher also has taken Kamionka's deposition). In light of these facts, the Complaint Information is plainly duplicative and cumulative. The Complaint Information is nothing more than a catalog of issues

raised by borrowers through telephone conversations, emails and letters, including with respect to calls that NSL makes for purposes of collection. Bratcher already has the production of complaints filed in lawsuits, and the related testimony. Thus, the Court should overrule the Order.

Furthermore, the Complaint Information does not, and could not, add anything to Bratcher's ability to prove her claims. Instead, the proof that would relate to her claims is simple and narrow. To prove her TCPA claim, Bratcher must demonstrate that NSL contacted her without the requisite "prior express consent" and using an autodialer. Meanwhile, on the FCCPA and FDCPA claims, Bratcher must show that the calls somehow were harassing or abusive. The Complaint Information would do nothing to assist Bratcher in proving these claims, which turn entirely on NSL's actions as they pertain to its servicing of Bratcher's delinquent student loans, and not any other person's.

In response to these Objections, Bratcher likely will argue that the Complaint Information goes to the issue of willfulness under the TCPA. Given the Eleventh Circuit's willfulness standard, however, this argument fails. "The requirement of 'willful[] or knowing[]' conduct requires the violator to know he was performing that conduct that violates the statute." Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1107 (11th Cir. 2015). This standard requires a detailed inquiry into the alleged violator's conduct as it pertains to the calls at issue. See Brown v. Account Control Tech., Inc., No. 0:13-62765-CIV-DIMITROULEAS, 2015 U.S. Dist. LEXIS 180605, at *10 (S.D. Fla. Jan. 15, 2015) (denying summary judgment on willfulness because it was "unclear whether the agents actually saw [the] information, and to what extent such information on the [system] interface suggested that the number was linked to a cell

phone"). In other words, the Complaint Information will not assist Bratcher in proving the issue of willfulness and, by her Motion, she sought only to harass and disadvantage NSL.

> B. **NSL Objects To The Order As Contrary To The Weight of Authority And Requiring A Production That Is Disproportionate To The Needs Of Bratcher's Case.**

In determining whether discovery is proportional to the needs of the case, courts consider the following factors: "(1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit." Sheets v. Sorrento Villas, No: 8:15-cv-1674-T-30JSS, 2016 U.S. Dist. LEXIS 97381, at *4 (M.D. Fla. July 26, 2016) (citing Fed. R. Civ. P. 26(b)). "Requests for production of documents must be within the scope of discovery." Id. (citing Fed. R. Civ. P. 34(a)); see also Gates v. Travelers Commer. Ins. Co., No. 3:12-cv-349-J-32TEM, 2012 U.S. Dist. LEXIS 176649, at *8 (M.D. Fla. Dec. 12, 2012) ("A district court has discretion to limit discovery of relevant material upon a determination the sought discovery is unreasonably cumulative or duplicative, obtainable from some other source that is more convenient, less burdensome, or less expensive, or the burden or expense of the proposed discovery outweighs the likely benefit.").

Here, the Order is contrary to the weight of authority regarding proportionality with respect to the production of complaints. As noted above, in Cedeno, the court rejected plaintiff's request for production of the Complaint Information where NSL had already produced formal complaints. Cedeno is in accord with ample case law that only requires production of lists of prior lawsuits, not even the actual complaints themselves. See Pollock v. Northland Grp., Inc., No. 12-80335-RYSKAMP/HOPKINS, 2012 U.S. Dist. LEXIS 191950, at *2 (S.D. Fla. Aug. 22, 2012); Rubin v. Northland Grp., Inc., No. 12-80320-RYSKAMP/HOPKINS, 2012 U.S. Dist.

LEXIS 191949, at *2 (S.D. Fla. Aug. 13, 2012); see also Anderson v. Domino's Pizza, Inc., No. 11-cv-902 RBL, 2012 U.S. Dist. LEXIS 45503, at *6 (W.D. Wash. Mar. 30, 2012); Donnelly v. NCO Fin. Sys., Inc., 263 F.R.D. 500, 505 (N.D. Ill. 2009).  In any event, even where courts have gone beyond requiring production of a list of lawsuits, they have limited such productions to formal written complaints related specifically to the claims at issue.  See, e.g., McCaskill v. Navient Solutions, Inc., Case No. 8:15-cv-1559-T-33TBM, Dkt. 64 at 7 (M.D. Fla. Dec. 31, 2015) (requiring production of complaints by government agencies in addition to evidence of TCPA lawsuits).  The production of the Complaint Information at issue here is simply not supported under existing case law.  To the contrary, the production plainly is disproportional to the needs of Bratcher's case.[2]

      **C.    NSL Objects To The Finding That It Failed to Demonstrate That The Complaint Information is Proprietary and Confidential.**

Some of the Complaint Information consists of private and confidential information. Each entry in the Complaint Information pertains to a particular borrower, and some entries reflect borrowers' circumstance with respect to outstanding student loans.  Accordingly, to some extent, the Complaint Information contains borrowers' names, addresses, student loan status/balances, etc.  Clearly, by its very nature, such information is, and should be, protected as private and confidential.  See, e.g., Wells Fargo Bank, N.A. v. Clark, No. 6:11-cv-06248-HO, 2012 U.S. Dist. LEXIS 145145, at *7 (D. Ore. Oct. 5, 2012) (noting that a temporary restraining order was granted to remove "customer names, addresses, loan numbers and other confidential information" from a website); Fiddler's Creek, LLC v. Naples Lending Group LC, No: 2:14-cv-379-FtM-29CM, 2016 U.S. Dist. LEXIS 93850 (M.D. Fla. July 19, 2016) (recognizing the "sensitive and confidential nature of . . . financial discovery" and denying discovery requests

---

[2] And, again, Bratcher's case is of limited value.  At most, there are 74 telephone calls at issue, over an almost twenty month period, from August 5, 2014 through April 26, 2016.

accordingly); see also Family Holdings, LLC v. San Jorge Children's Healthcare, Inc., 297 F.R.D. 19, 20 (D.P.R. 2014) ("The non-parties, claiming that the records sought include their confidential financial information, have standing to object to the subpoenas."). Moreover, as noted above, these entries would have to be redacted from the Confidential Information on a line-by-line basis (which, in contrast, is not the case for complaints filed in court, which NSL has produced). Under the circumstances at hand, that burden is not justified.

## IV. Conclusion

For the foregoing reasons, NSL respectfully requests an Order sustaining NSL's Objections and overruling the Order and such other relief as the Court deems just and proper.

WHEREFORE, Defendant, Navient Solutions, LLC respectfully requests an Order sustaining NSL's Objections and overruling the Order and such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Rachel A. Morris
Rachel A. Morris, Esq.
Florida Bar No. 0091498
Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277
Rachel A. Morris, Esq.
Florida Bar No. 0091498
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3350 Buschwood Park Drive, Suite 195
Tampa, FL 33618
Telephone:   (813) 890-2469
Facsimile:   (866) 466-3140
dvanhoose@sessions.legal
ramorris@sessions.legal

Attorneys for Defendant,
Navient Solutions, LLC

## **CERTIFICATE OF SERVICE**

I certify that on this 14th day of March, 2017, a copy of the foregoing was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including Plaintiff's counsel as described below. Parties may access this filing through the Court's system.

Stefan Alveraz, Esq.<br>
The Consumer Protection Firm, PLLC<br>
Suite 210-A<br>
South MacDill Avenue<br>
Tampa, FL 33609

/s/ Rachel A. Morris
Attorney