IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MELONIE BRATCHER,

    Plaintiff,

v.

NAVIENT SOLUTIONS, INC.,

    Defendant.

No. 3:16-cv-00519-HES-JBT

**DEFENDANT NAVIENT SOLUTIONS, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Navient Solutions, LLC, formerly known as Navient Solutions, Inc. ("NSL"), by and through undersigned counsel, moves this Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56, and, in support thereof, states as follows:

**INTRODUCTION**

Plaintiff Melonie Bratcher ("Bratcher") brings claims against NSL for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA") and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692, et seq..[1]  The TCPA prohibits, among other things, making a call to a cellular telephone through the use of an automated telephone dialing system without the called party's "prior express consent."  The FDCPA is another federal statute which regulates the permissible acts and practices of debt collectors.

NSL is a servicer of student loans, including with respect to federal student loans that are owned or guaranteed by the United States Department of Education ("ED").  As part of its

---

[1] Bratcher also alleges claims under the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55, et seq., The Motion is not directed to those claims.

servicing function, NSL makes calls and sends letters to borrowers, so as to collect on delinquent loan amounts and advise them of available repayment options.

In the Complaint, Bratcher contends that NSL violated the TCPA when it called her on her cell phone regarding her federal student loan(s). However, very simply, these claims fail as a matter of law. The Bipartisan Budget Act of 2015 (the "Budget Act"), effective as of November 2, 2015, amended the TCPA to eliminate the prior express consent requirement for calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. 227(b)(1)(A)(iii). Because NSL called Bratcher with respect to her federal student loan, NSL's liability under the TCPA is limited to calls made before the Budget Act's effective date.

Further, Bratcher lacks standing for several phone calls. The call log NSL produced in discovery demonstrates that 47 of the phone calls to Bratcher's cellular telephone did not cause Bratcher's telephone to ring. Thus, because Bratcher did not suffer a concrete harm in connection with these phone calls, she cannot recover statutory damages under the TCPA as a result of them.

Finally, there can be no liability under the FDCPA, as NSL is not a "debt collector" as defined therein.

## BACKGROUND

I. **NSL, Bratcher's Loan And The Phone Calls**

NSL is engaged in the business of servicing student loans, including with respect to loans owed to or guaranteed by ED. The servicing of federal student loans is governed by a complex set of federal regulations promulgated by ED, pursuant to the Higher Education Act of 1965, as amended. See 34 C.F.R. §§ 682.400-682.423. As relevant here, when federal student loans become past due, the servicer, such as NSL, is required to contact delinquent borrowers. (34 C.F.R. § 682.411(c)-(f)).

Bratcher took out two federal loans (the "Loans") on August 24, 2007 in the combined original amount of $4,999.98. NSL serviced these Loans during the timeframe relevant to this case until they were consolidated on July 5, 2016. (See Exhibit B, Declaration of Carl O. Cannon ("Cannon Decl."), ¶ 5.) Bratcher has never made a payment on the Loans. Bratcher elected to postpone regularly scheduled payments at various times, and has obtained a few forbearances and deferments, but her Loans have been in and out of delinquency since August 20, 2011. (Id., ¶ 6.)

NSL's call log demonstrates that NSL placed 263 phone calls to Bratcher's cellular telephone number between August 5, 2014 and April 26, 2016. The call log further indicates whether each phone call listed actually caused Bratcher's phone to ring. Specifically, entries with the tag "SIT Callable" or "Not Reached" in the Column G of the call log, which contains the "wrapup" category, did not cause Bratcher's telephone to ring. (*See* Exhibit C, Declaration of Joshua Dries ("Dries Decl."), ¶ 3.) There are 47 phone calls tagged as "SIT Callable" or "Not Reached" in the call log, meaning that 47 of the phone calls to Bratcher did not cause her phone to ring.

## II. The Complaint

Bratcher alleges that she revoked her prior express consent for calls to her cellular telephone several times. (Complaint, ¶ 26.) However, according to Bratcher, NSL called her thereafter approximately 100 times between 2015 and the filing of the Complaint. (Id., ¶ 32.) Accordingly, on April 28, 2016, Bratcher filed her Complaint against NSL, asserting claims for violation of the TCPA and FDCPA. (Id.)

## ARGUMENT

### I. The Legal Standard

"Adjudications of partial summary judgment are authorized under Rule 56(d), Fed. R. Civ. P., and are governed by the standards for summary judgment in Rule 56(c)." Heller v. Plave, No. 89-0639-CIV-ATKINS, 1993 WL 557846, at *4 (S.D. Fla. Aug. 2, 1993) (citing Johns v. Jarrard, 927 F.2d 551, 554-56 (11th Cir. 1991)).  A partial summary judgment "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." Heller, 1993 WL 557846 at *4; Advisory Committee Note to Rule 56(d), 1946 Amendment; see also Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986); see also Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). A fact is material when, under the substantive governing law, it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the evidence offered in support of the motion establishes every essential element of a defense, there is no need to offer evidence to negate or disprove matters on which the opposing party has the burden of proof at trial. Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2548.

"After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" Legg v. Voice Media Grp., Inc., 20 F. Supp. 3d 1370, 1373 (S.D. Fla. 2014) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). To show there is a genuine issue of material fact "requires more than showing a mere scintilla of evidence; the non-movant must show that reasonable jurors could find by a preponderance of the evidence that the non-movant is entitled

to a verdict." Velten v. Lippert, 985 F.2d 1515, 1523 (11th Cir. 1993) (citing Anderson, 477 U.S. at 252, 106 S. Ct. at 2512). Indeed, the Eleventh Circuit has held that the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F. 2d 1573, 1576–77 (11th Cir. 1990).

Here, NSL easily meets the standard for summary judgment. As explained below, the facts are narrow and extraordinarily simple, and the governing law is clear and unmistakable. The Court therefore should grant the Motion.

## II.     The Budget Act Bars Bratcher's TCPA Claims In Their Entirety.

On November 2, 2015, the President signed the Budget Act into law. Section 301 of the Budget Act (the "Amendment") provides that autodialed calls are exempt from the TCPA's prior express consent requirement if they are "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). Here, Bratcher proposes to recover for autodialed calls made by NSL on her federal student loan between 2015 and April 28, 2016. Because many of these calls took place after the effective date of the Amendment, no prior express consent requirement applied to them, and the calls therefore did not violate the TCPA.

Moreover, the calls made to Bratcher are precisely of the type that Congress intended to permit through the Amendment. For example, in the lead-up to passage of the Budget Act, ED issued a report calling for Congress to "change the law to ensure that servicers can contact borrowers using modern technology." See "Strengthening the Student Loan System to Better Protect All Borrowers," U.S. Department of Education, October 1, 2015, at p. 16 <available at http://www2.ed.gov/documents/press-releases/strengthening-student-loan-system.pdf>    (last viewed May 4, 2016). ED argued that:

> If servicers are able to contact a borrower, they have a much better chance at helping that borrower resolve a delinquency or default. Many student loan borrowers, especially those that may just be graduating, move frequently in addition to no longer having landline phone numbers. As such, it can be difficult for servicers to find a borrower except by using a cell phone number. Current Federal law prohibits servicers from contacting borrowers on a cell phone number using an auto-dialer unless the borrower has provided explicit consent to be contacted at that number. With phone numbers changing or being reassigned on a regular basis, it is virtually impossible for servicers to use auto-dialing technology. The President's 2016 Budget proposed amending this law to allow the use of automated dialers to contact borrowers to inform them of their federal repayment obligations and benefits like Pay As You Earn, or Rehabilitation, in the case of a defaulted borrower.

Id. Thus, based on the Amendment and ED's sound, underlying rationale in requesting it, the Court should find that Bratcher's claims fail.

Furthermore, the Court should reject any contention from Bratcher that this outcome somehow changes in light of rulemaking issued by the Federal Communications Commission (the "FCC") on August 11, 2016. The Budget Act directed the FCC to "prescribe regulations to implement the amendments made" by Section 301 within nine months of enactment. See Budget Act at § 301(b). The FCC did just that on August 11, 2016, when it released a Report and Order to implement the Amendment. See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, FCC 16-99 (August 11, 2016) (the "August 2016 Order"), attached as Exhibit A. The August 2016 Order appended the FCC's Final Rules implementing the Amendment; however, the Final Rules are not yet effective. As the August 2016 Order makes clear, because certain of the Final Rules implicate the Paperwork Reduction Act, as a whole, the rules will not become effective "until 60 days after the Commission publishes a Notice in the Federal Register indicating approval of the information collection by the Office of Management and Budget (OMB)." See August 2016 Order at 24 at ¶¶ 59-60. Thus, the Final Rules are not in place and, until they are, the Amendment applies, as written.

**III.     Bratcher Lacks Standing To Pursue Damages For Several Phone Calls.**

To establish standing, a plaintiff must allege facts demonstrating that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). In Spokeo, the Supreme Court outlined the framework of the complete standing analysis courts should use to determine whether an injury in fact has been alleged; "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan v. Defenders of Wildlife, 504 US 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

A concrete injury is a "real" one; it is "not abstract" and it "actually exist[s]." Spokeo, 136 S.Ct. at 1548. Further, the Supreme Court noted that while Congress can elevate injuries to be legally recognizable by statute, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right." Id. A plaintiff cannot allege a procedural violation absent a concrete harm. "Article III standing requires a concrete injury even in the context of a statutory violation." Id.

Since the Supreme Court's Spokeo decision, numerous courts have recognized that a bare allegation that the defendant violated the TCPA, and that the plaintiff is consequently entitled to statutory damages, is inadequate to establish concrete injury. See Smith v. Aitima Medical Equipment, Inc., 16-CV-00339, 2016 U.S. Dist. LEXIS 113671 at *10 (C.D.Ca. July 29, 2016); Romero v. Dep't Stores Nat'l Bank, No. 15-CV-0193, 2016 U.S. Dist. LEXIS 110889, at *20-21 (S.D. Cal. Aug. 5, 2016).

Moreover, "battery drainage, aggravation, and nuisance" and other supposed "concrete" injuries of the type alleged by Plaintiff are, when resulting from a comparably small number of calls, "at most de minimus" and consequently not sufficient harms to satisfy the requirement of concreteness. Smith, 2016 U.S. Dist. LEXIS 113671 at *10, *13; Susinno v. Work Out World Inc., No. 15-CV-5881, 2016 U.S. Dist. LEXIS 113664, at *1 (D.N.J. Aug. 1, 2016) (because the plaintiff had received only a single, one-minute call, the court found that the harm caused by any aggravation or loss of battery life was de minimis and did not amount to the concrete harm needed to confer Article III standing).[2] See also Olmos v. Bank of America, N.A., 15-CV-2786, 2016 U.S. Dist. LEXIS 72329, (S.D. Cal. June 6, 2016) ("loss of battery life and bandwidth" resulting from receipt of two text messages de minimus and insufficient to confer standing); Hernandez v. Path, Inc., 2012 U.S. Dist. LEXIS 151035 (N.D. Cal. Oct. 19, 2012) (alleged "diminished mobile device resources, such as storage, battery life, and bandwidth" resulting from downloading app also insufficient to confer standing).

Here, for 47 of the phone calls at issue, Bratcher has not suffered <u>any</u> injury. As explained above, 47 of the phone calls are tagged as "SIT Callable" or "Not Reached" in the "wrapupcategory" column, indicating that these phone calls did not cause Bratcher's telephone to ring. (*See* Ex. C, Dries Decl. ¶ 3.) Accordingly, Bratcher did not suffer a concrete harm in connection with these phone calls.

Importantly, Bratcher conceded in her deposition that she cannot dispute NSL's record of the phone calls:

> Ms. Van Hoose:    . . . Did you prepare any diaries or logs or calendars or notes or journals or any kind of summary about your claims in this lawsuit?

---

[2] This is a Short Form Order; the Susinno court's rationale is set forth in the transcript of the prior hearing on the defendant's Motion to Dismiss at 21:8-26:8.

| | |
|---|---|
| Ms. Bratcher: | Okay. No, ma'am. |

. . .

| | |
|---|---|
| Ms. Van Hoose: | . . . You had a piece of paper. Do you remember what . . . period of time that you had that piece of paper in that you were logging the calls? |
| Ms. Bratcher: | I think I started in February, and I think February to March. |
| Ms. Van Hoose: | Is that about when you threw it away, in March? |
| Ms. Bratcher: | I didn't throw it away. Well, yeah, I guess I did throw it away. My cat peed on it. I'm sorry. |

. . .

| | |
|---|---|
| Ms. Van Hoose: | Okay. So since you no longer have a record of the calls, now that you can't log the calls, you don't have anything that would dispute or refute Navient's record of the calls, correct? |

. . .

| | |
|---|---|
| Ms. Bratcher: | Me personally? No. |

(Deposition of Melonie Bratcher, 37:18-37:21, 116:13-116:22, 118:25-119:5.)

Accordingly, the Court should grant summary judgment in NSL's favor with respect to the phone calls that did not cause Bratcher's phone to ring.

**IV.   Bratcher's FDCPA Claim Fails Because NSL Is Not A "Debt Collector."**

Before Plaintiff may sue for alleged violations of the FDCPA, he must first establish that NSL is a "debt collector" within the meaning of the statute. Indeed, the FDCPA was enacted to "eliminate abusive debt collection practices by **debt collectors**, to insure that those **debt collectors** who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e) (emphases added).

Pursuant to the FDCPA, a "debt collector" is defined as a person whose "principal [business] purpose is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §

-9-

1692a(6). The term "debt collector" expressly does not include "any person collecting or attempting to collect any debt . . . to the extent such activity . . . concerns a debt which was not in default at the time it was obtained . . . ." 15 U.S.C. § 1692a(6)(F)(iii). The legislative history of the FDCPA clearly shows Congress intended parties who service debts not in default when obtained (such as mortgages and student loans) should be excluded from the FDCPA's coverage. S. Rep. No. 95-382, 95th Cong., 1st Sess. 3-4, reprinted in 1977 U.S.C.A.A.N. 1695, 1698.

Further, Courts have widely held that entities that service student loans before such loans default are not "debt collectors" within the meaning of the FDCPA. See, e.g., Pelfrey v. Educ. Credit Mgmt. Corp., 71 F. Supp. 2d 1161, 1170 (N.D. Ala. 1999) (reviewing case law and noting that student loan servicing agencies are not subject to the FDCPA), aff'd, 208 F.3d 945 (11th Cir. 2000); Horton v. HSBC Bank, 2013 WL 2452273, No. 1:11-CV-3210-TWT, at *8 (N.D. Ga. June 5, 2013); Jones v. InTuition, Inc., 12 F. Supp. 2d 775, 779 (W.D. Tenn. 1998) (defendant not a "debt collector" because it began servicing the student loan at issue before default); Coppola v. Conn. Student Loan Found., Case No. N-87-398 (JAC), 1989 U.S. Dist. LEXIS 3415, at **6-7 (D. Conn. 1989) (student loan servicer excluded from FDCPA's definition of "debt collector"); and Fischer v. Unipac Serv. Corp. & Student Loan Mktg. Ass'n, 519 N.W.2d 793, 799-800 (Iowa 1994) ("[C]ollection efforts by holders of federally insured student loans or their servicing companies are simply not the kind of activity that Congress intended to regulate [under the FDCPA].").

Here, Bratcher has not claimed that the Loan was in default when NSL obtained it, nor did she claim that NSL acquired the Loan from any other party after default. Nor can she, where NSL has serviced them since origination, when they were in good standing and obviously prior to default. (See Ex. B, Cannon Decl., ¶ 5). Accordingly, Bratcher's FDCPA claim against NSL

fails as a matter of law, and there exists no genuine issue of fact that would allow this claim to proceed.

## **CONCLUSION**

For the foregoing reasons, NSL respectfully requests that this Court grant summary judgment in favor of NSL on Bratcher's claims under the TCPA for phone calls after November 2, 2015 and the FDCPA.

Dated: April 17, 2017

Respectfully submitted,

NAVIENT SOLUTIONS, LLC


By:/s/ Rachel A. Morris
            By Its Attorneys

Rachel A. Morris, Esq.
Florida Bar No. 0091498
Dayle M. Van Hoose, Esq.
Florida Bar No. 0016277
SESSIONS, FISHMAN, NATHAN & ISRAEL, L.L.C.
3350 Buschwood Park Drive, Suite 195
Tampa, FL 33618
Telephone: (813) 890-2469
Facsimile: (866) 466-3140
ramorris@sessions.legal
dvanhoose@sessions.legal

## **CERTIFICATE OF SERVICE**

I certify that on this 17th day of April 2017, a copy of the foregoing was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system or U.S. First Class Mail including plaintiff's counsel as described below. Parties may access this filing through the Court's system.

William P. Howard, Esq.
Amanda J. Allen, Esq.
Stefan Alvarez, Esq.
The Consumer Protection Firm, PLLC
210 A. South MacDill Avenue
Tampa, FL 33609

/s/ Rachel A. Morris
Attorney