**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

MELONIE BRATCHER,

        Plaintiff,

v.

NAVIENT SOLUTIONS, INC.,

        Defendant.

No. 3:16-cv-00519-HES-JBT

**DEFENDANT NAVIENT SOLUTIONS, LLC'S
RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Navient Solutions, LLC ("NSL"), by and through undersigned counsel, in response to the Motion for Partial Summary Judgment (the "Motion") filed herein by plaintiff Melonie Bratcher ("Bratcher") states as follows:

**I.**      <u>Introduction</u>

By her Motion, Bratcher seeks to impose liability on NSL for supposed violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, <u>et seq.</u> (the "TCPA").  The TCPA prohibits, among other things, making a call to a cellular telephone using an automated telephone dialing system without the called party's "prior express consent."  Calls made without the requisite consent are subject to statutory damages, in the amount of $500 for negligent violations or up to $1,500 for willful violations.  Bratcher maintains that NSL made numerous calls to her after she revoked the requisite consent and, thus, in willful violation of the TCPA.  As detailed below, however, Bratcher is not entitled to summary judgment on her TCPA claims based on disputed facts and applicable law.

<u>First</u>, contrary to her assertions, Bratcher did not "clearly" revoke her consent for NSL to call during conversations that took place on March 14 and 18, 2016.  As NSL's corporate

representatives testified, Bratcher did not provide enough information during those conversations for NSL to validate her identity, such as account number or social security number.  Because many of the calls that NSL makes involve sensitive financial information, including student loans balances and delinquencies, NSL asks for verification information during telephone calls in the interest of privacy.  With respect to revocation, and under such circumstances -- where the caller is not certain of to whom it is speaking or the called party's intent -- courts have denied summary judgment.  Indeed, courts in the Eleventh Circuit consistently refuse to decide the issue of revocation at the summary judgment stage, reasoning that it is an issue of fact for the jury to decide.  NSL is aware of no decision in which an Eleventh Circuit court resolved the issue of revocation in favor of a plaintiff on summary judgment.[1]

Second, Bratcher cannot secure summary judgment on the issue of willfulness.  As an initial matter, given that Bratcher's assertions of revocation fail, NSL's phone calls after the supposed revocations cannot be said to be willful.  Further, NSL takes significant measures to ensure that it complies with the TCPA, and whether agents making phone calls are following these measures presents a question of fact.  This is especially so because the willfulness standard in the Eleventh Circuit requires a defendant to know that it was undertaking conduct that violates the TCPA – i.e., knowingly making calls without the requisite consent.  And, again, as with revocation, NSL is aware of no decision in which an Eleventh Circuit court has resolved the issue of willfulness in favor of a plaintiff on summary judgment.

Third, even setting aside the issues of revocation and willfulness, Bratcher's TCPA claims are barred as a matter of law.  The Bipartisan Budget Act of 2015 (the "Budget Act"),

---

[1]     In fact, very recently, in <u>Cedeno v. Navient Solutions, LLC</u>, No. 16-61049, Dkt. 93 (S.D. Fa. April 26, 2017), a court in the Southern District of Florida denied summary judgment on the issue of revocation, leaving a factual determination to the jury.  According to Bratcher, that case involves facts "eerily similar" to those presented here.  (Motion, p. 2.)

effective as of November 2, 2015, amended the TCPA to eliminate the prior express consent requirement for calls "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. 227(b)(1)(A)(iii).   Because NSL called Bratcher with respect to her federal student loans, it has no liability under the TCPA for phone calls after the Budget Act's effective date.[2]

Fourth, and finally, Bratcher lacks standing to sue for several of the phone calls at issue. The call log produced by NSL in discovery reflects that 47 of the phone calls to Bratcher's cellular telephone did not cause Bratcher's telephone to ring, and 37 of these calls occurred after the alleged revocation on March 14, 2016.   Thus, because Bratcher did not suffer any concrete harm arising from these phone calls, she cannot recover statutory damages for them under the TCPA.

For all of the reasons set forth above, Bratcher is not entitled to summary judgment. Accordingly, the Motion should be denied in its entirety.

## II.      Response To Statement Of Material Facts

1.      Undisputed.

2.      Undisputed.

3.      Disputed.   The calls took place between August 5, 2015 and April 26, 2016. (NSL Call log, Bates No. NSI0000084, attached as Exhibit B to Bratcher's Motion.)

4.      Disputed.   A review of the call log demonstrates that NSL did not call Bratcher "nearly every day."   (Id.)   For instance, NSL did not call Bratcher between September 22, 2015 and January 20, 2016.   (Id.)

5.      Disputed.   It is not NSL's policy to robocall customers eight times a day. (Deposition of Joshua J. Dries ("Dries Dep."), at 32:18-36:9, attached hereto as Exhibit 1.

---

[2]      NSL has filed its own Motion for Partial Summary Judgment, raising this defense.

6.      Disputed.  The call log shows 263 call attempts, but 47 of those phone calls did not cause Bratcher's phone to ring.  (NSL Call log, Bates No. NSI0000084, attached as Exhibit B to Bratcher's Motion; Declaration of Joshua Dries ("Dries Decl."), ¶ 3, attached hereto as <u>Exhibit 2</u>.)

7.      Undisputed.

8.      Undisputed.

9.      Undisputed.

10.     Undisputed.

11.     Disputed.   NSL's corporate representative did not testify that the recorded conversations on March 14, 2016 and March 18, 2016 would be considered revocations of consent.    Instead, with respect to the March 14, 2016 conversation, NSL's corporate representative refused to agree that it constituted a revocation because she could not be sure the person on the phone was Bratcher.  (Deposition of Cheryl Dillon ("Dillon Dep."), at 67:25-73:5, attached as Exhibit D to Bratcher's Motion.)   Further, with respect to the March 18, 2016 conversation, NSL's corporate representative stated that it would be a revocation only if the agent "knew it to be the customer."  (<u>Id.</u>, at 83:18-83:15.)

12.     Undisputed.

13.     Disputed.  NSL's corporate representative did not testify that "stop calling me" is a key phrase where TCPA consent must be removed.  NSL's corporate representative stated that "If someone says, Stop calling me, it may be reason to remove consent," but that "situations vary."  (<u>Id.</u>, at 32:7-33:9.)

14.     Disputed.  According to NSL's TCPA Customer Resolution Services Policy, "Do not call" is not a phrase which invariably means that TCPA consent must be removed.  Rather,

"Do not call" is a key phrase "that will help identify scenarios where TCPA consent must be removed."  (Id., Ex. 2, Bates Nos. NSI0000104 - NSI 0000117.)

15.     Undisputed.

16.     Undisputed.

17.     Disputed.  The call log shows 263 call attempts, but 47 of those phone calls did not cause Bratcher's phone to ring.  (NSL Call log, Bates No. NSI0000084, attached as Exhibit B to Bratcher's Motion; Dries Decl., ¶ 3, attached hereto as Exhibit 2.)

18.     Disputed.  The call log shows 263 call attempts, but 47 of those phone calls did not cause Bratcher's phone to ring.  (NSL Call log, Bates No. NSI0000084, attached as Exhibit B to Bratcher's Motion; Dries Decl., ¶ 3, attached hereto as Exhibit 2.)

19.     Disputed.  The call log shows 263 call attempts, but 47 of those phone calls did not cause Bratcher's phone to ring.  (NSL Call log, Bates No. NSI0000084, attached as Exhibit B to Bratcher's Motion; Dries Decl., ¶ 3, attached hereto as Exhibit 2.)

20.     Disputed.  The call log shows 263 call attempts, but 47 of those phone calls did not cause Bratcher's phone to ring.  (NSL Call log, Bates No. NSI0000084, attached as Exhibit B to Bratcher's Motion; Dries Decl., ¶ 3, attached hereto as Exhibit 2.)

21.     Disputed.  NSL denies that Bratcher revoked consent in the March 14, 2016 and March 18, 2016 phone calls.  Further, if this Court determines that Bratcher did revoke consent in those phone calls, NSL denies that phone calls thereafter were made with knowledge of Bratcher's revocations of consent.

22.     Undisputed.

**III.     Additional Material Facts**

       **Defendant**

1.     NSL is engaged in the business of servicing student loans.  (Declaration of Carl O. Cannon ("Cannon Decl."), ¶ 3, attached hereto as <u>Exhibit 3</u>.)   Some of those loans, like Bratcher's, are owned or guaranteed by the United States Department of Education ("ED"), and NSL services the loans on ED's behalf.  (Dillon Dep., at 62:10-62:11, attached as Exhibit D to Bratcher's Motion.)

2.     The servicing of loans owned or guaranteed by ED is governed by a complex set of federal regulations, pursuant to the Higher Education Act of 1965 (the "HEA"), as amended. <u>See</u> 34 C.F.R. §§ 682.400-682.423, 685.300-685.309.  However, as relevant here, when federal student loans become past due, NSL is required to contact delinquent borrowers.  34 C.F.R. § 682.411(c)-(f).

**Bratcher And The Loans**

3.     Bratcher took out two federal loans (the "Loans") on August 24, 2007 in the combined original amount of $4,999.98.  NSL serviced these Loans during the timeframe relevant to this case until they were consolidated on July 5, 2016.  (Cannon Decl., ¶ 5, attached hereto as <u>Exhibit 3</u>.)

4.     Bratcher has never made a payment on the Loans.  Bratcher elected to postpone regularly scheduled payments at various times, and has obtained a few forbearances and deferments, but her Loans have been in and out of delinquency since August 20, 2011.  (<u>Id.</u>, ¶ 6.)

**Consent To Contact Bratcher**

5.     Bratcher provided NSL with permission to contact her with the use of an "automatic telephone dialing system" on her cellular telephone, (904) 615-3534, during telephone conversations with NSL representatives on several occasions, including, but not

-6-

limited to, May 29, 2014 and June 3, 2014.  (Resps. of Def. NSL to Pl.'s First Set of Interrogs., No. 2, attached hereto as Exhibit 4.)

**The Phone Calls**

6.      NSL's call log reflects 263 phone calls made to Bratcher's cellular telephone number between August 5, 2014 and April 26, 2016.  (NSL Call log, Bates No. NSI0000084, attached as Exhibit B to Bratcher's Motion.)

7.      The call log further indicates whether each phone call listed actually caused Bratcher's phone to ring.  Some did not.  Specifically, entries with the tag "SIT Callable" or "Not Reached" in Column G of the call log, which contains the "wrapup" category, did not cause Bratcher's telephone to ring.  (Dries Decl., ¶ 3, attached hereto as Exhibit 2.)

8.      There are 47 phone calls tagged as "SIT Callable" or "Not Reached" in the call log, meaning that 47 of the phone calls to Bratcher did not cause her phone to ring.  (Id., ¶ 4.)

9.      Of these 47 phone calls, 37 occurred after the March 14, 2016 phone conversation, and 24 occurred after the March 18, 2016 phone conversation.  (Id.)

**NSL's TCPA Policies and Procedures**

10.      NSL maintains policies and procedures designed to train employees, implement infrastructure and manage technology to ensure compliance with the TCPA and other applicable laws.  (Resps. of Def. NSL to Pl.'s First Set of Interrogs., No. 2, attached hereto as Exhibit 4.)

11.      These procedures require NSL agents to validate the consumer's identity before making any changes to the consumer's account.  (Customer Resolution Services, TCPA Job Aid, attached as Exhibit G to Bratcher's Motion.)

IV.    **Argument**

A.      **Legal Standard**

Summary judgment should be granted only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  A court may not make credibility determinations or engage in any weighing of the evidence at the summary judgment stage.  See, e.g., Munnings v. Fedex Ground Package Sys., No. 6:07-cv-282-Orl-19KRS, 2008 U.S. Dist. LEXIS 33041, at *54 (M.D. Fla. Apr. 22, 2008) (citing Hairston v. Gainesville Sun Pub. Co., 9 F.3d 913, 919 (11th Cir. 1993)).  Indeed, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Cesaire v. Med. Servs., No: 6:15-cv-1886-Orl-28DCI, 2016 U.S. Dist. LEXIS 162615, at *4 (M.D. Fla. Nov. 23, 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

Here, as detailed below, Bratcher plainly does not meet the standard for summary adjudication on her TCPA claims.  Accordingly, the Court should deny the Motion in its entirety.

**B.**      **Bratcher Is Simply Not Entitled To Summary Judgment Here.**

**1.**      **Disputed Issues Of Fact Preclude A Finding That Bratcher Revoked Consent To Be Called.**

With respect to the revocation of consent under the TCPA, "the common law concept of consent" applies.  Schweitzer v. Comenity Bank, 158 F. Supp. 3d 1312, 1315 (S.D. Fla. 2016) (citing Osorio v. State Farm Bank F.S.B., 746 F.3d 1242, 1255 (11th Cir. 2014)). Specifically, "consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct."  Id. (citing Osorio, 746 F.3d at 1253). However, courts consistently recognize that revocation involves an issue of material fact that is not properly resolved in the summary judgment context, but instead should go to the jury.  See

-8-

Osorio, 746 F.3d at 1256 (holding that "the question of whether [plaintiff] effectively revoked whatever consent [defendant] might have had to call . . . should proceed to a jury" because "it is exactly the kind of factual dispute that cannot properly be resolved on summary judgment.").[3] Further, and importantly, courts refuse to grant summary judgment where the person allegedly revoking consent does not provide sufficient information to be identified.  Alvarado, 2015 U.S. Dist. LEXIS 52820, at *31; see also Buchholz v. Valarity, LLC, No. 4:13CV362 TIA, 2014 U.S. Dist. LEXIS 159239, at *6, 21 (E.D. Mo. Nov. 12, 2014).  Thus, Bratcher is mistaken in her contention that "there is [sic] absolutely no legal grounds" for refusing to find revocation here. (Motion, p. 14.)

For instance, in Alvarado v. Credit Prot. Ass'n, L.P., plaintiff asserted that he revoked consent when he sent defendant a "pre-suit letter." No. 8:14-cv-447-T-33TGW, 2015 U.S. Dist. LEXIS 52820, at *30–31 (M.D. Fla. Apr. 22, 2015).  The defendant argued that the pre-suit letter was ineffective to revoke consent because, among other things, it was "devoid of almost all personal identifying information." Id. at *31.  The court denied summary judgment, explaining that "[t] his is exactly the kind of factual dispute that cannot properly be resolved on summary judgment.  Id. at *32.  Similarly, in Buchholz v. Valarity, LLC, the "Plaintiff informed Defendant that [he] would not disclose personal information out over the phone and told the

---

[3]     See also Brown v. Account Control Tech., Inc., No. 0:13-62765-CIV-DIMITROULEAS, 2015 U.S. Dist. LEXIS 180605, at *10 (S.D. Fla. Jan. 15, 2015); Hitchman v. Nat'l Enter. Sys., No. 12-61043-Civ-MARRA/MATTHEWMAN, 2014 U.S. Dist. LEXIS 30623, at *11 (S.D. Fla. Mar. 10, 2014); Alvarado v. Credit Prot. Ass'n, L.P., No. 8:14-cv-447-T-33TGW, 2015 U.S. Dist. LEXIS 52820, at *32 (M.D. Fla. Apr. 22, 2015); Soulliere v. Cent. Fla. Invs., Inc., No. 8:13-CV-2860-T-27AEP, 2015 U.S. Dist. LEXIS 36858, at *18 (M.D. Fla. Mar. 24, 2015); Nev. Walker v. Transworld Sys., No: 8:14-cv-588-T-30MAP, 2015 U.S. Dist. LEXIS 17982, at *5 (M.D. Fla. Feb. 13, 2015); Smith v. MarkOne Fin., LLC, No. 3:13-cv-933-J-32MCR, 2015 U.S. Dist. LEXIS 11803, at *9–10 (M.D. Fla. Feb. 2, 2015); Walker v. Transworld Sys., No: 8:14-cv-588-T-30MAP, 2014 U.S. Dist. LEXIS 174136, at *7 (M.D. Fla. Dec. 17, 2014); Gray v. Morgan Drexen, Inc., No: 2:13-cv-83-FtM-29DNF, 2014 U.S. Dist. LEXIS 78079, at *9 (M.D. Fla. June 9, 2014).

Defendant to 'stop calling [him].'" 2014 U.S. Dist. LEXIS 159239, at *6. Accordingly, the

court found "that whether Plaintiff effectively revoked his consent to be called when he told

Defendant to 'stop calling' remains a disputed fact." Id., at *21. And, finally, in Cedeno v.

Navient Solutions, LLC, the plaintiff stated "[d]on't call me anymore," but did not provide

identifying information. No. 16-61049, Dkt. 93, at *6 (S.D. Fla. April 26, 2017). The court

denied summary judgment, holding that the "interpretations of these statements and whether or

not they constitute oral revocations of prior consent are fact finding questions for the jury, not

susceptible to resolution on summary judgment." Id.

Likewise, here, Bratcher did not "clearly" revoke her consent in the March 14, 2016 and

March 18, 2016 phone calls. The March 14, 2016 phone call proceeded as follows:

| | |
|---|---|
| NSL AGENT: | Hello, good morning. Melonie Bratcher? |
| BRATCHER: | Yes. |
| NSL AGENT: | Hi ma'am, this call may be recorded. My name is Romeo from Navient. My employee code is C49543. I'm calling today -- |
| BRATCHER: | Okay, I'm going to stop you right now. I'm already taking care of my student loans and I would appreciate it if you guys would stop calling me. |
| NSL AGENT: | All right, so, how did you take care of that one, ma'am? |
| BRATCHER: | Because I've already made arrangements with the Department of Education. |
| NSL AGENT: | I see, I understand that one Ms. Bratcher, but I'm not representing the Department of Education. |
| BRATCHER: | I know you are not. You are representing Navient, which is also being sued. So, I don't want you guys calling me again. Thank you very much. |
| NSL AGENT: | Ms. Bratcher -- |
| | (Call terminated.) |

(March 14, 2016 Call Recording, NSI0000075, attached as Exhibit E to Bratcher's Motion.)

And the March 18, 2016 phone call proceeded as follows:

| | |
|---|---|
| NSL AGENT: | Hello, Melonie, Melonie Bratcher? |
| BRATCHER: | Yes. |
| NSL AGENT: | Hi, this is Camille from Navient. |

BRATCHER:                I asked you guys not to call me anymore.  I'm getting an attorney and I'm going to sue you guys now.  Have a good day.  Don't call me again.
(Call terminated.)

(March 18, 2016 Call Recording, NSI0000078, attached as Exhibit F to Bratcher's Motion.)  In the Motion, Bratcher argues that, by these brief conversations, she "clearly revoked consent." (Motion, p. 12.)  In both phone calls, however, Bratcher interrupts NSL's agent before the agent is able to ask for Bratcher's verification of her identity.  Thus, whether these abrupt exchanges constitute revocation is a question that should be left to the trier of fact.  Alvarado, 2015 U.S. Dist. LEXIS 52820, at *31-32; Buchholz, 2014 U.S. Dist. LEXIS 159239, at *21; Cedeno, No. 16-61049, Dkt. 93, at *6.

### 2.       Issues Of Fact Also Preclude A Finding Of Willfulness On Summary Judgment.

In the Eleventh Circuit, "[t]he requirement of 'willful[] or knowing[]' conduct requires the violator to know he was performing that conduct that violates the statute."  Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1107 (11th Cir. 2015).  This is because, if courts "interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are not 'willful[] or knowing[].'" Id. (citing  Harris v. World Fin. Network Nat'l Bank, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012) ("Such a broad application of 'willful[]' or 'knowing' would significantly diminish the statute's distinction between violations that do not require an intent, and those willful[] and knowing violations that [C]ongress intended to punish more severely.")).  Therefore, as even Bratcher notes in her Motion, "the Eleventh Circuit has observed that a 'willfull or knowing' violation requires more than a showing that the caller know it was making a 'call.'" (Motion, p. 19.)  This is a very difficult showing to make, and as with revocation, courts routinely find that a question of material fact exists.

For instance, in <u>Brown v. Account Control Tech., Inc.</u>, defendant's policies prohibited "calling cell phones without permission," and the agents placing the calls had access to information regarding whether the number at issue was a cellular phone number. 2015 U.S. Dist. LEXIS 180605, at *10–11. Nevertheless, the court held "that genuine questions of material fact exist as to whether any violations of the TCPA were willful or knowing, and denie[d] summary judgment on this issue with respect to both parties." <u>Id.</u> at *11–12. The court reasoned that it was "unclear whether the agents actually saw [the] information [when making calls], and to what extent such information on the [system] interface suggested that the number was linked to a cell phone." <u>Id.</u> at 11.

Likewise, here, a genuine issue of material fact exists as to whether the alleged violations were willful. As with the defendant in <u>Brown</u>, NSL maintains policies and procedures designed to train employees, implement infrastructure and manage technology to ensure compliance with the TCPA and other applicable laws. (Resps. of Def. NSL to Pl.'s First Set of Interrogs., No. 2, attached hereto as <u>Exhibit 4</u>.) In addition, because Bratcher did not clearly revoke consent in the June March 14 and 18, 2016 conversations, the agents, of course, did not make notations in her account records indicating a revocation. Accordingly, the agents making the subsequent phone calls did not possess information reflecting that they should not be calling Bratcher. Against this background, a determination of willfulness simply cannot be made on summary judgment. <u>See Pollock v. Bay Area Credit Serv.</u>, No.: 08-61101-Civ-Dimitrouleas/Snow, 2009 U.S. Dist. LEXIS 71169, at *31–32 (S.D. Fla. Aug. 13, 2009) (denying summary judgment on the issue of willfulness even though defendant "admitted that it knew of the [TCPA's] prohibitions, yet had a practice and policy of telephoning consumers without any knowledge of whether it was a cell phone and had no procedures in place to determine this").

It also should be noted that Bratcher's further arguments in support of willfulness are equally unavailing.  As an initial matter, Bratcher points to 528 lawsuits, 326 complaints to the Consumer Financial Protection Bureau and 1,320 complaints to the Better Business Bureau, filed against NSL over the past 3 years.  But these prove nothing at all here, and certainly not willful violations of the TCPA.  (Motion, p. 17.)  Very simply, setting aside the fact that not all of these complaints involve collection calls, the number of complaints against NSL is more a measure of the size of its business -- which currently includes servicing more than 12 million customers -- than evidence of willful disregard for the law.  (<u>See</u> Navient Corporation's Form 10-K, p. 5, attached hereto as <u>Exhibit 5</u>.)

In the same vein, Bratcher also relies on approximately 2,800 informal complaints submitted to NSL over 26 months and stored in its Customer Satisfaction Interface Database (the "CSI Database"), which tracks consumer complaints.  (Motion, p. 17)  Again, viewed against the size of its servicing business, these complaints prove nothing.  They amount to approximately 108 complaints per month out of NSL's 12 million customers.  (<u>See</u> Navient Corporation's Form 10-K, p. 5, attached hereto as <u>Exhibit 5</u>.)  Bratcher also fails to mention that the CSI Database describes the steps that NSL takes to resolve each individual complaint.  For example, various entries indicate that customers were placed on a cease and desist status after they asked NSL to stop calling.  Thus, in sum, far from demonstrating that NSL is engaging in an "**institutional refusal** to properly document revocations of consent in brazen violation of the TCPA," the CSI Database reflects that NSL takes seriously its obligations to comply with the TCPA.  (<u>Id.</u> pp. 17-18 (emphasis in original).)

Furthermore, Bratcher's inaccurately describes the deposition testimony of NSL's corporate representative in support of her willfulness argument.  According to Bratcher, NSL

admitted that she revoked consent, and that it intentionally called her thereafter with knowledge that she had done so.  (Motion, p. 18.)  NSL never made such an admission.  With respect to the March 14, 2016 conversation, NSL's corporate representative refused to agree that it constituted a revocation because the agent did not get the chance to validate her identity by asking for account number or social security number -- i.e., she could not be sure the person on the phone call was Bratcher.  (Dillon Dep., at 67:25-73:5, attached as Exhibit D to Bratcher's Motion.) Similarly, with respect to the March 18, 2016 conversation, NSL's corporate representative explicitly stated that it would be a revocation only if the agent "knew it to be the customer."  (Id., at 83:18-83:15.)

In addition, while Bratcher cites to several decisions in which courts awarded treble damages for willful violations of the TCPA, not one is from the Eleventh Circuit where such an award was made on summary judgment (and it appears that no such decisions exist).  To the contrary, and as recently explained by a court in the Middle District of Florida denying summary judgment on the issue of willfulness, the three Eleventh Circuit cases on which Bratcher relies "involved a default judgment setting in which there was uncontroverted evidence of continued communications after a clear request that calls cease."  Cesaire v. Med. Servs., No: 6:15-cv-1886-Orl-28DCI, 2016 U.S. Dist. LEXIS 162615, at *19 n.16 (M.D. Fla. Nov. 23, 2016).  As the Cesaire court noted, these cases "are factually distinguishable."  Id. at *19.

Meanwhile, the decisions that Bratcher cites from other jurisdictions are distinguishable, too.  In Sengenberger v. Credit Control Services, Inc., the Northern District of Illinois granted treble damages on summary judgment, but did so by applying a different standard than that used by Eleventh Circuit courts.  No. 09 C 2796, 2010 U.S. Dist. LEXIS 43874, at *16–17 (N.D. Ill. May 5, 2010).  The court defined willfulness as meaning that "an action was intentional,"

irrespective "of whether the defendant knew that it was acting in violation of the statute."  Id. This stands in stark contrast to the willful or knowing standard that the Eleventh Circuit uses, which requires a defendant to "know he was performing that conduct that violates the statute." Lary, 780 F.3d at 1107.  Further, in A Fast Sign Co., Inc. v. Am. Home Servs., Inc., a state court case, the award of treble damages came "[a]t the conclusion of a bench trial."  734 S.E.2d 31, 32 (Ga. 2012).  Accordingly, the case law does not support a grant of treble damages for willful violations of the TCPA in the context of summary judgment.[4]

### 3.    Under The Budget Act, Bratcher's Claims Fail As A Matter of Law.

On November 2, 2015, the Budget Act was signed into law.  Section 301 of the Budget Act (the "Amendment") provides that autodialed calls are exempt from the TCPA's prior express consent requirement if they are "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii).  Here, Bratcher proposes to recover for autodialed calls made by NSL on her federal student loan after March 14, 2016.  Because all of these calls took place after the effective date of the Amendment, no prior express consent requirement applied to them, and the calls therefore did not violate the TCPA.

Moreover, the calls made to Bratcher are precisely of the type that Congress intended to permit through the Amendment.  For example, in the lead-up to passage of the Budget Act, ED issued a report calling for Congress to "change the law to ensure that servicers can contact borrowers using modern technology."  See "Strengthening the Student Loan System to Better Protect All Borrowers," U.S. Department of Education, October 1, 2015, at p. 16 <available at

---

[4]    Perhaps in recognition of this, Bratcher also asks the court to apply a "recklessness" standard, and cites to a United States Supreme Court case outside of the TCPA context, and an Eighth Circuit case.  (Motion, p. 15.)  The Eleventh Circuit case law on willfulness is clear, though.  Accordingly, the Court should not be persuaded by Bratcher's attempt to use a more friendly standard that finds no support in this Circuit.

http://www2.ed.gov/documents/press-releases/strengthening-student-loan-system.pdf> (last viewed May 4, 2016). ED argued that:

> If servicers are able to contact a borrower, they have a much better chance at helping that borrower resolve a delinquency or default. Many student loan borrowers, especially those that may just be graduating, move frequently in addition to no longer having landline phone numbers. As such, it can be difficult for servicers to find a borrower except by using a cell phone number. Current Federal law prohibits servicers from contacting borrowers on a cell phone number using an auto-dialer unless the borrower has provided explicit consent to be contacted at that number. With phone numbers changing or being reassigned on a regular basis, it is virtually impossible for servicers to use auto-dialing technology. The President's 2016 Budget proposed amending this law to allow the use of automated dialers to contact borrowers to inform them of their federal repayment obligations and benefits like Pay As You Earn, or Rehabilitation, in the case of a defaulted borrower.

Id. Thus, based on the Amendment and ED's sound, underlying rationale in requesting it, the Court should find that Bratcher's claims fail.

Notably, the Court should reject any contention from Bratcher that this outcome somehow changes in light of rulemaking issued by the Federal Communications Commission (the "FCC") on August 11, 2016. The Budget Act directed the FCC to "prescribe regulations to implement the amendments made" by Section 301 within nine months of enactment. See Budget Act at § 301(b). The FCC did just that on August 11, 2016, when it released a Report and Order to implement the Amendment. See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, FCC 16-99 (August 11, 2016) (the "August 2016 Order"), attached hereto as Exhibit 6. The August 2016 Order appended the FCC's Final Rules implementing the Amendment; however, the Final Rules are not yet effective. As the August 2016 Order makes clear, because certain of the Final Rules implicate the Paperwork Reduction Act, as a whole, the rules will not become effective "until 60 days after the Commission publishes a Notice in the Federal Register indicating approval of the information collection by the Office of Management and Budget (OMB)." See

-16-

August 2016 Order at 24 at ¶¶ 59-60.  Thus, the Final Rules are **not in place** and, until they are, the Amendment applies, as written.

In pursuing the Motion, NSL expects Bratcher to argue that its Budget Act defense has been rejected.  The truth, though, is that courts have not had consistent views, and this Court will, of course, consider the issue for itself.  For instance, in <u>Hassert v. Navient Solutions, Inc</u>., 2017 U.S. Dist. LEXIS 60165, *2 (W.D. Wis. Jan. 5, 2017), the court accepted the defense and dismissed the asserted claims.  The court found simply that, "<u>in 2015, Congress amended the TCPA</u> so that it prohibits autodialed calls to cell phones except when the 'call is made solely to collect a debt owed to or guaranteed by the United States.'" <u>Id</u>. at *3 (emphasis added).  Despite the FCC Order that followed in August 2016, the court held that the Budget Act amendment to the TCPA applied and, thus, "the TCPA does not prohibit Navient's alleged calls to Hassert, and Hassert's complaint does not state a claim for relief." <u>Id</u>. at *1.

In other matters, however, courts have found that the amendment does not apply.  <u>See Cooper v. Navient Solutions, LLC</u>, No. 8:16-cv-3396-T-30MAP, Dkt. 24 (M.D. Fla. April 24, 2017); <u>Cedeno</u>, No. 16-61049, Dkt. 93, at *6.  In these decisions, the courts found that, despite the plain language of the amendment, which contains <u>no</u> time limit on its effectiveness, the exemption was not implemented until the FCC enacted regulations on August 11, 2016.  NSL submits that these conclusions do not square with the language of the amendment, or the ordinary canons of statutory construction; they fail to credit any meaning to the plain text of the amendment as of the date of its passage, November 2, 2015  Accordingly, the exemption should apply, as written, until the Final Rules take effect.

### 4.      Further, Bratcher Lacks Standing For Several Phone Calls.

To establish standing, a plaintiff must allege facts demonstrating that he or she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016).  In <u>Spokeo</u>, the Supreme Court outlined the framework of the complete standing analysis courts should use to determine whether an injury in fact has been alleged; "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is concrete and particularized' and 'actual and imminent, not conjectural or hypothetical.'" <u>Id.</u> at 1548 (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 US 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

A concrete injury is a "real" one; it is "not abstract" and it "actually exist[s]." <u>Spokeo</u>, 136 S.Ct. at 1548.  Further, the Supreme Court noted that while Congress can elevate injuries to be legally recognizable by statute, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right." <u>Id.</u>  A plaintiff cannot allege a procedural violation absent a concrete harm. "Article III standing requires a concrete injury even in the context of a statutory violation." <u>Id.</u>

Since the Supreme Court's <u>Spokeo</u> decision, numerous courts have recognized that a bare allegation that the defendant violated the TCPA, and that the plaintiff is consequently entitled to statutory damages, is inadequate to establish concrete injury.  <u>See</u> <u>Smith v. Aitima Medical Equipment, Inc.</u>, 16-CV-00339, 2016 U.S. Dist. LEXIS 113671 at *10 (C.D.Ca. July 29, 2016); <u>Romero v. Dep't Stores Nat'l Bank</u>, No. 15-CV-0193, 2016 U.S. Dist. LEXIS 110889, at *20-21 (S.D. Cal. Aug. 5, 2016).

Moreover, "battery drainage, aggravation, and nuisance" and other supposed "concrete" injuries of the type alleged by Plaintiff are, when resulting from a comparably small number of calls, "at most de minimus" and consequently not sufficient harms to satisfy the requirement of

concreteness.  Smith, 2016 U.S. Dist. LEXIS 113671 at *10, *13; Susinno v. Work Out World Inc., No. 15-CV-5881, 2016 U.S. Dist. LEXIS 113664, at *1 (D.N.J. Aug. 1, 2016) (because the plaintiff had received only a single, one-minute call, the court found that the harm caused by any aggravation or loss of battery life was de minimis and did not amount to the concrete harm needed to confer Article III standing);[5] see also Olmos v. Bank of America, N.A., 15-CV-2786, 2016 U.S. Dist. LEXIS 72329, (S.D. Cal. June 6, 2016) ("loss of battery life and bandwidth" resulting from receipt of two text messages de minimus and insufficient to confer standing); Hernandez v. Path, Inc., 2012 U.S. Dist. LEXIS 151035 (N.D. Cal. Oct. 19, 2012) (alleged "diminished mobile device resources, such as storage, battery life, and bandwidth" resulting from downloading app also insufficient to confer standing).

Here, for 37 of the phone calls at issue, Bratcher has not suffered any injury.  As explained above, 37 of the phone calls after the supposed March 14, 2016 revocation are tagged as "SIT Callable" or "Not Reached" in the "wrapupcategory" column, indicating that these phone calls did not cause Bratcher's telephone to ring.  (Dries Decl. ¶ 3, attached hereto as Exhibit 2.)  Accordingly, Bratcher did not suffer a concrete harm in connection with these phone calls.

Importantly, Bratcher conceded in her deposition that she cannot dispute NSL's record of the phone calls:

| | |
|---|---|
| Ms. Van Hoose: | . . .  Did you prepare any diaries or logs or calendars or notes or journals or any kind of summary about your claims in this lawsuit? |
| Ms. Bratcher: | Okay.  No, ma'am. |

. . .

---

[5]     This is a Short Form Order; the Susinno court's rationale is set forth in the transcript of the prior hearing on the defendant's Motion to Dismiss at 21:8-26:8.

| Ms. Van Hoose: | . . . You had a piece of paper.  Do you remember what . . . period of time that you had that piece of paper in that you were logging the calls? |
| Ms. Bratcher: | I think I started in February, and I think February to March. |
| Ms. Van Hoose: | Is that about when you threw it away, in March? |
| Ms. Bratcher: | I didn't throw it away.  Well, yeah, I guess I did throw it away.  My cat peed on it.  I'm sorry. |

. . .

| Ms. Van Hoose: | Okay.  So since you no longer have a record of the calls, now that you can't log the calls, you don't have anything that would dispute or refute Navient's record of the calls, correct? |
| . . . | |
| Ms. Bratcher: | Me personally?  No. |

(Deposition of Melonie Bratcher, 37:18-37:21, 116:13-116:22, 118:25-119:5, attached as Exhibit A to Bratcher's Motion.)

Accordingly, by her own admission, Bratcher cannot demonstrate any supposed injury from these calls based on evidence in her possession.  Thus, the Court should deny summary judgment with respect to the 37 phone calls that did not cause Bratcher's phone to ring after the alleged March 14, 2016 revocation.

## V.     <u>Conclusion</u>

For the foregoing reasons, NSL respectfully requests that this Court deny the Motion in its entirety.

-20-

Dated: May 1, 2017                          Respectfully submitted,

                                            NAVIENT SOLUTIONS, LLC


                                            By:  /s/ Rachel A. Morris
                                            _____
                                                      By Its Attorneys

                                            Rachel A. Morris, Esq.
                                            Florida Bar No. 0091498
                                            Dayle M. Van Hoose, Esq.
                                            Florida Bar No. 0016277
                                            SESSIONS, FISHMAN, NATHAN & ISRAEL,
                                            L.L.C.
                                            3350 Buschwood Park Drive, Suite 195
                                            Tampa, FL 33618
                                            Telephone: (813) 890-2463
                                            Facsimile: (866) 466-3140
                                            ramorris@sessins.legal
                                            dvanhoose@sessions.legal

-21-

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 1st day of May 2017, a copy of the foregoing was filed electronically in the ECF system.  Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system or U.S. First Class Mail including plaintiff's counsel as described below.  Parties may access this filing through the Court's system.

William P. Howard, Esq.
Amanda J. Allen, Esq.
Stefan Alvarez, Esq.
The Consumer Protection Firm, PLLC
210 A. South MacDill Avenue
Tampa, FL 33609

/s/ Rachel A. Morris
Attorney

LOS_ANGELES/#26749.1