**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MELONIE BRATCHER,

          Plaintiff,

v.

                         Case No. 3:16-cv-00519-HES-JBT

NAVIENT SOLUTIONS, LLC,

          Defendant.

_____

**PLAINTIFF'S REPLY IN OPPOSITION TO DEFENDANT'S, NAVIENT SOLUTIONS, LLC, AMENDED RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT [DOC. 51]**

_____

## ARGUMENT

I.     **Plaintiff is Entitled to Summary Judgment as There is No Dispute that She Effectively Revoked Any Prior Express Consent to be Called During Recorded Conversations on March 14, 2016 and March 18, 2016**

"Do not call" means "Do not call." "Stop calling" means "Stop calling." There is no issue of material fact with regard to the meaning of those simple words. Simply because the Defendant says otherwise does not suddenly create an issue of material fact where none exists, particularly when **its own policies and procedures explicitly recognize that these words constitute a revocation of consent to make further calls** (See Doc. 44-8 at 5). With no way to reasonably strip the "revocation" out of words like "Don't" and "Stop," the Defendant has resorted to manufacturing a factually bankrupt "identification" defense to absolve its willful and knowing violations of the law.

Defendant relies upon *Alvarado v. Credit Prot. Ass'n, L.P.*, 8:14-CV-447-T-33TGW, 2015 WL 1815863 (M.D. Fla. Apr. 22, 2015)("*Alvarado*"), as well as several other similarly inapposite cases, to establish that an "identification" defense to revocation is cognizable under the law. These arguments are nothing short of frivolous.  In *Alvarado*, for example, the letter that allegedly constituted revocation "was devoid of the following information: Plaintiff's address, cellular telephone number, account reference number, or any mention of a particular debt," which presented a problem for the defendant because it had several persons in its records with the same first and last name. *Id.* at *1, *7. It should be obvious that a situation where a creditor cannot identify the unknown party that sent a letter, such as the case in *Alvarado*, has virtually no resemblance to situations like the instant case where the Defendant was attempting to reach the Plaintiff at a number known to be hers.

Furthermore, the Defendant's obstinence in pursuing this "identification" defense has an

utter lack of factual support. Indeed, both the March 14, 2016 and March 18, 2016 calls begin with the Defendant's representatives **addressing the Plaintiff by name (i.e., Melonie Bratcher) and the Plaintiff acknowledging that it was to her with whom they were speaking.** Not only that, after these standard salutations, the Defendant's representative **repeatedly addressed the Plaintiff by name** (i.e. Ms. Bratcher). This conduct was hardly surprising as the calls in question had been made with **what the Defendant knew to be the Plaintiff's phone number with the expectation of reaching her**. Yet, despite all these facts, the Defendant expects the Court to now believe it did not know who it was talking to. To put it simply, a defense more "made up out of whole cloth" would be difficult to envision.

Ms. Bratcher sufficiently exercised her legal right to revoke consent on March 14, 2016 and again on March 18, 2016, as "the TCPA requires only that the called party clearly express his or her desire not to receive further calls." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 ¶ 67 (2015). The two audio recordings in this case leave no question that Ms. Bratcher *clearly* expressed such a desire.

## II.     The Amendments Made To The TCPA By The Bipartisan Budget Act of 2015 Do Not Extinguish The Plaintiff's Claims

Navient Solutions, LLC's (NSL) position that the TCPA applied to them before November 2, 2015, and will only apply to them once again after the FCC regulations become effective, simply makes no sense. Indeed, as is reflected in NSL's own motion, the Bipartisan Budget Act of 2015 "directed the FCC to 'prescribe regulations **to implement the amendments made**' by Section 301 within nine months of enactment.'" (Doc. 43 at 6) (quoting § 301(b) of the Bipartisan Budget Act of 2015) (emphasis added). In that Order, the FCC stated: "The remaining rules will not become effective until the rules requiring OMB approval become effective" and, more notably, "[w]e determine that the regulatory scheme we implement today must include both

3

the ability for callers to make calls and the right of debtors to ask that calls stop—**and that both portions of the regulatory scheme become effective simultaneously. To do otherwise would be to allow callers to make calls but to leave debtors with no consumer protections until OMB approval is complete**" (emphasis added). *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, FCC 16–99, ¶¶ 59–60 (August 11, 2016). As such, it is evident that the relevant changes in the law were not self-executing upon enactment of the Bipartisan Budget Act of 2015, but rather were intended to take effect only after being implemented by FCC regulation.

NSL's position that such non-consent calls can currently be made without restriction is thus blatantly at odds with this governing FCC authority, which is subject to Hobbs Act deference, and therefore is binding on this Court. *See Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1119 (11th Cir. 2014) (noting that, pursuant to the Hobbs Act, the U.S. Courts of Appeal are the exclusive venue for challenging FCC regulations). The FCC's salient remarks in this regard cut not only against the unavailing "authority" cited by NSL, but also the fundamental premise of NSL's argument that Congress intended to create a "Wild West" period where such a complete TCPA exemption would be in place. Of course, particularly in light of Bipartisan Budget Act of 2015's mandate that the FCC create regulations to **implement** the relevant statutory changes (including the express authority to restrict or limit the number and duration of calls made), the very premise that Congress intended to create such a lawless period for U.S. Government debt collectors such as NSL is illogical in the extreme. Several courts have recently agreed with that conclusion. The August 2016 FCC Order has provided the foundation for two recent decisions in the Middle and Southern Districts of Florida to deny this precise

4

argument by Defendant.[1]

For the above reasons, the amendments made to the TCPA by the Bipartisan Budget Act of 2015 do not extinguish the Plaintiff's claims under the TCPA.

### III.   Plaintiff's TCPA Claim Sufficiently Constitutes a Concrete Injury Establishing Article III Standing

Defendant argues Plaintiff lacks Article III standing but (1) wrongly asserts that there is no controlling authority when *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245 (11th Cir. 2015) squarely found Article III standing for TCPA claims; (2) fails to cite the Eleventh Circuit's recent opinion on standing in *Perry v. Cable News Network, Inc.,* 854 F.3d 1336, 1340 (11th Cir. 2017) (expressly finding a violation of the plaintiff's statutory rights, by itself, is a concrete injury); and (3) ignores the overwhelming majority of opinions that have found standing for TCPA claims, including numerous cases in the Eleventh Circuit.[2] Instead, the Defendant primarily relies on a single California case that has been rejected by the vast majority of courts and is not even good law in its own district after the recent Ninth Circuit TCPA ruling in *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) ("[a] plaintiff alleging a violation under the TCPA need not allege any additional harm

---

[1] In fact, the two motions for partial summary judgment by this same Defendant that were recently denied are *identical* to Defendant's Motion (Doc. 43) in regards to the Bipartisan Budget Act of 2015 argument, with the only distinction being the plaintiff names and dates. Defendant's template argument is therefore an indistinguishable mirror image of these recently denied motions. *See Cooper v. Navient Sols., LLC*, No. 8:16-cv-03396-JSM-MAP, Dkt. 17 (M.D. Fla. Mar. 23, 2017); *Cedeno v. Navient Sols., LLC*, No. 0:16-cv-61049-AOR, Dkt. 32 (S.D. Fla. Nov 17, 2016). Most recently, the courts in *Cooper* and *Cedeno* also denied nearly identical motions for certification of interlocutory appeal by this Defendant following the denials of Defendant's summary judgment. *See Cooper*, No. 8:16-cv-03396-JSM-MAP, Dkt. 33 (M.D. Fla. May 25, 2017); *Cedeno*, No. 0:16-cv-61049-AOR, Dkt. 106 (S.D. Fla. June 20, 2017).

[2] The mere allegation that these calls took place is sufficient to confer Article III standing for Plaintiff. *See LaVigne v. First Cmty. Bancshares, Inc.*, No. 1:15-cv-00934-WJ-LF, 2016 WL 6305992, at **4–6 (D.N.M. Oct. 19, 2016); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *Gorss Motels, Inc.  v. Safemark Systems*, No. 6:16-CV-1638-ORL-31DCI, 2017 WL 57313, at *1 (M.D. Fla. Jan. 5, 2017); *Tillman v. Ally Fin. Inc.*, No. 2:16-CV-313-FTM-99CM, 2016 WL 6996113, at *4 (M.D. Fla. Nov. 30, 2016); *JWD Auto., Inc. v. DJM Advisory Group LLC*, No. 2:15-CV-793-FTM-29MRM, 2016 WL 6835986, at *3 (M.D. Fla. Nov. 21, 2016); *Prindle v. Carrington Mortgage Services, LLC*, No. 3:13-CV-1349-J-34PDB, 2016 WL 4369424, at *10 (M.D. Fla. Aug. 16, 2016); *Mei Ma v. Convergent Outsourcing, Inc., et al.*, No. LACV1604558JAKAGRX, 2017 WL 2558439, at *3 (C.D. Cal. June 13, 2017).

beyond the one Congress has identified.").[3]

Lastly, Defendant's analysis that any call labelled as either "SIT Callable" or "Not Reached" cannot result in liability under the TCPA misapplies the proper analysis utilized in these cases, as it is irrelevant whether the calls placed by Defendant caused Plaintiff's phone to ring.[4] We need not look further than the plain language of the TCPA—whether the calling party "***make[s] any call***." As demonstrated both by Defendant's call log and Plaintiff's T-Mobile records, there is no dispute that the calls were *made*. Whether the calls caused Plaintiff's phone to ring is immaterial and irrelevant. As such, Plaintiff has more than sufficiently established Article III standing.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a partial summary judgment order concluding that the Plaintiff is entitled to $111,000.00 in trebled damages for Defendant's seventy-four calls after March 14, 2016 in willful or knowing violation of the TCPA—or $85,500.00 in trebled damages for Defendant's fifty-seven calls after March 18, 2016. Alternatively, Plaintiff asks for her statutory minimum damages of $500 per call or $37,000.00 for Defendant's seventy-four calls—or $28,500 for Defendant's fifty-seven calls.

---

[3] *See also, Mei Ma v. Convergent Outsourcing, Inc., et al.*, No. LACV1604558JAKAGRX, 2017 WL 2558439, at *3 (C.D. Cal. June 13, 2017) ("The Complaint alleges that the unsolicited, automated phone calls "invaded Plaintiff's privacy," Dkt. 1 ¶ 17, and "wasted Plaintiff's time and caused annoyance, stress, and distraction"…These allegations reflect the very "nuisance and privacy invasion" harms that Congress sought to address with the TCPA."; *citing Van Patten*, 847 F.3d at 1043. This is sufficient to confer Article III standing. *citing Spokeo*, 136 S. Ct. at 1549 ("a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified."). The allegations cited by the Central District of California as sufficient to confer Article III standing are nearly identical to those alleged by Ms. Bratcher in this matter. (*See* Doc. 1) .

[4] The prohibition found in the TCPA specifies that it is unlawful "to ***make*** any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A) (emphasis added).This Honorable Court in its Order Denying Defendant's Motion to Compel (Doc. 38) has previously cited to a case in the Southern District of Florida that has addressed this very issue, which held, "The plain language of the Act prohibits "*mak[ing] any call* ... using any automatic telephone dialing system ... [to] any telephone number assigned to a ... cellular telephone service." *See* § 227(b)(1)(A) (emphasis added). MRS [Defendant] is essentially arguing that the statute's prohibition language not only requires that a call be "made" or placed using an automatic telephone dialing system, but that the owner of the cellular telephone number be "aware" of the calls. **The text of the TCPA, however, does not include such a requirement."** *Fillichio v. M.R.S. Assocs., Inc.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010) (emphasis added).

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on June 21, 2017, a true copy of the foregoing was filed with

the Clerk of the Court and served on the parties of record using the CM/ECF system.

Respectfully submitted,

*/s/ Stefan A. Alvarez, Esq.*
Stefan A. Alvarez, Esq.
Florida Bar No.: 100681
Stefan@TheConsumerProtectionFirm.com
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 010330
Billy@TheConsumerProtectionFirm.com
THE CONSUMER PROTECTION FIRM, PLLC
210-A South MacDill Avenue
Tampa, FL 33609
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Attorneys for Plaintiff